Bouldin J.
On the application of Dr. Aaron H. Atwood, the intestate of the plaintiff', then residing in the State of New Hampshire, a policy of insurance was, on the 80th of December 1846, issued to Sarah Jane Atwood, then the wife of Dr. Atwood, by the plaintiff in error, an insurance company chartered by the .State of New Jersey, and having its principal office in Newark in that State, insuring the life of Dr. Atwood in the sum of $2,600 for the term of life. The annual premium to he paid was $50.18, and the policy contained the usual clauses vacating the policy in case of failure to pay puuctually the annual premiums on or before the days *499 specified for the payment thereof, and providing that all payments previously made and all profits should be forfeited to the company in that eveut.
The premiums were all regularly paid or settled for according to the regulations of the company, by Dr. Atwood, down to the 30th day of December 1861, when the last premium fell due. Prior to that time, to wit: about the year 1850, Dr. Atwood removed to the State of Virginia, where he resided until his death, a portion of the time in the city of Richmond, and the residue thereof in the county of Amelia; and during the whole time of his residence in Virginia he paid or settled for the annual premiums aforesaid to B. "W. Knowles, agent of the plaintiff in error in this State, until the 30th day of December 1861. At and before that date war had broken out and was then raging between the United •States, of which the State of New Jersey was a member, .and the Confederate States, of which Virginia was a member, and in consequence thereof Knowles, the agent of the insurance company, declined to receive payment of the premium falling due on the day last mentioned ; but he took a note or bond therefor, subject to the approval of his company. Before the next premium fell due, viz: on the 29th of November 1862, Dr. Atwood died in Amelia county, Virginia; so that at his death every premium, except the last, had been settled for by him. His widow, the defendant in error, was appointed and qualified as his administratrix.
Mrs. Sarah Jane Atwood, first wife of Dr. Atwood, to whom the policy was issued, died about two years after her marriage, leaving an only child," who survived her hut a short time, dying in infancy. Dr. Atwood married a second -wife, who died in 1858, leaving three children who are still living; and in November 1859 he mar-’ Tied the defendant in error. After the war was over the *500 defendant in error called at the office of the company’s agency in Richmond to ascertain what the company proposed to do; at which time she offered to pay in gold, if required, the amount of her deceased husband’s note for the premium of December 1861. She was informed that if the company should decide to pay the insurance money “the amount of the note could be deducted from it.” This conversation was not with Knowles in person, but with his partner, Walford. Very soon afterwards she received a letter from Walford, in which she is informed that Knowles requires, on behalf of the company, the usual proofs of the death of Dr. Atwood, which were promptly furnished; but no satisfactory settlement being offered by the company, the defendant in error, as administratrix of Dr. Atwood, instituted this suit in the Circuit court of the city of Richmond to recover the amount of insurance money, less the dues on the policy.
The material facts proved on the trial were substantially as above stated; and the defendant below demurred to the evidence. The plaintiff’ joined in the demurrer, and the jury assessed the plaintiff’s damage to $2,361.15, with interest from the 1st of December 1865 till paid, subject to the opinion of the court upon the demurrer. The court gave judgment on the demurrer for the plaintiff; and the case comes before this court on a writ of error to that judgment. The case has been ably ai’gued on both sides, and presents on its merits a question of grave interest and importance, viz: the effect of the late war on policies of life insurance, when the underwriters on the one hand, and the assured and insured on the other reside respectively in hostile States. This question has been very recently fully considered by this court, in a case differing in no material aspect from the case now under consideration, and in my judgment has been definitely settled. I allude to the case of The Manhattan Life *501 Insurance Company v. Warwick, 20 Gratt. 614. The syllabus of the ease, as stated by the reporter, is as follows : “In July 1847 W of Richmond obtains from the M. Ins. Co. of New York, through their agent in Richmond, a policy of insurance for the life of S his debtor, forfeited if premiums not paid on the day. An endorsement on the policy says, no payment of premiums binding on the company unless the same is acknowledged by a printed receipt signed by an officer of the company. Payments of the premium are made and such receipts given, signed by an officer in New York, countersigned by the agent here, to whom the money is paid, until 1861, when the premium is paid to the agent, but only the receipt of the agent here is given for it, and the company does not receive it. In July 1862 W offers to pay the premium to the agent here, but he declines to receive it, the company having directed him that the premiums must be paid in New York. 8 dies in November 1862. The M. Ins. Co. is liable to
This was a judgment of a majority of a full court, after elaborate argument and careful consideration, two judges dissenting; it was therefore the deliberate judgment of this court in a full court. It is true that two of the majority seemed unwilling to yield their assent to all the reasoning of the learned judge who prepared the opinion on that side; but it is very evident that they differed from him only in non-essentials, as they both concurred in the results — in the judgment of the court. That judgment necessarily established the following propositions :
1. That a policy of life insurance, providing for the payment of annual premiums under penalty of forfeiture .of all payments and all interest in the policy for non *502 payment, is not such a contract of continuing performance as is abrogated by a state of war, when the underwriter is a citizen of one of the hostile communities and the assured and insured are citizens of the other. It is-not abrogated, but suspended merely.
2. In such case the non-payment of premiums by reason of the failure or refusal of the underwriter or his-agent to receive the premiums in consequence of the existence of war does not vacate the policy.
These propositions of law were both involved in that, case, and it was absolutely necessary to establish them both before the judgment could rbe affirmed. That judgment having been affirmed by a majority of a full court after able and elaborate argument and grave deliberation on the very points, the decision will be regarded by me as settling the law of Virginia on those-questions.
In declaring what the law is, we have been taught that it is essential, “for the sake of obtaining uniformity, consistency and certainty,” to apply to the case in judgment the rules of law which have been established by the wise, learned and just who have preceded us, to adhere to precedent unless manifestly unjust and erroneous. In the language of Parke, J., I would say “it appears to me to be of great importance to keep this principle of decision steadily in view, not merely for the determination of the particular case, but for the interests-of law as a science.” The judicial rule, stare decisis, I have always regarded as sound and conservative, and obligatory on courts, but in the present ease it addresses-itself to my judgment with peculiar force, occupying as I do a seat on the bench of this court recently filled by one of the majority in the case referred to — the learned and lamented Judge Joynes. Under such circumstances it would be unseemly in me to attempt to weaken the *503 force of that judgment, for I fully concur with Lord ° Kenyon, that “ mischievous indeed to the public” would it be if “ that which was supposed to be law by the dom of our” predecessors should be swept away “in consequence of nexo lights occxxrring to nexo judges.” It will not be done in this case through my aid. I should feel bound, under the circumstances, to follow that decision, even were I doubtful of its propriety; but it is proper that I should say that I entertain no doubt whatever of its propriety. It commands my hearty concurrence and approbation. The reasoning on which it is based is, in my judgment, unanswerable, and I have been gratified to find that although the ground was then unexplored, the judgment of the court has been abundantly sustained by other and subsequent decisions. There are in fact but two cases known to me contra. ' One is the decision of Emmons, J., in the case of Tait, &c., v. The New York Life Insurance Company, in the Circuit court of the U. S. for the western district of Tennessee. Against this, and overthrowing it, we have the more satisfactory decisions of Judge Blatchford, U. S. Circuit court for the southern district of New York, in the case of Hamilton, &c. v. Mutual Life Insurance Company of New York, 9 Blatchford, 234, and of Bond, J., of the Circuit court of U. S. for the eastern district of Virginia, in the recent case of Hancock and wife v. The New York Life Insurance Company, reported 2 Ins. Law Journal, No. 12, p. 903, and also in 13 Am. L. Reg., No. 2, p. 103. Both of these decisions are in accord with The Manhattan Co. v. Warwick. As authority they are each equal at least to that of Judge Emmons. In number, and as I think, in reason, they . overthrow it. The next and only other case in conflict with The Manhattan Company v. Warwick, is the case of Dillard v. Manhattan Life Ins. Co., decided by the Supreme court of Georgia, July term 1871. In that case the *504 ground and only ground of the decision was that the . . . . payment of premiums was strictly a condition precedent to the obligation on the part of the company, and being so, neither illegality nor impossibility of performence woi;i^ excuse it. The opinion is very short, and the question whether the condition was not, in its nature and effects, a subsequent condition divestiDg an estate instead of a condition precedent; or if precedent its performance was not necessarily suspended with the entire contract during the war, seems not to have been discussed at the bar. It seems to have been treated, without opposition by counsel, as strictly a condition precedent, and not as a condition forfeiting a previously vested estate or right. Had the court taken the latter view of the condition it is evident the decision would have been different. The judge says, “ were this a case of forfeiture for the failure, we should hold that the forfeiture was prevented by the illegality of the performance of the condition.” Such he thought was not the case. But was not that precisely the character of the condition ? I will answer in the language of Judge Robertson, of the Supreme court of Kentucky, ill the case of New York Life Insurance Company v. Clopton, &c., 7 Bush’s R., 179, decided in August 1870, but not cited in the Geoi’gia case. Speaking of the same condition, the learned judge says, p. 188:
“However lawful the condition of avoidance, as prescribed in this case, may be admitted to be, it is in effect a forfeiture which ought not to be favored. To subject to forfeiture all the premiums paid, as well as the five thousand dollars for the loss of life, would be hai’shly and unreasonably penal, for no better cause than the inevitable non-precise payment of another instalment of premium, which the law prevented the appellant from a right to receive. Hone of the parties can be presumed to *505 have contemplated such a disabling war, or to have intended hy the condition of avoidance more than voluntary failure to pay, when there toas legal ability to receive the premiums.”
“Then, as according to principle and consistent authority, the contract was not dissolved by the war, how can this court, consistently with the spirit of the literal condition and the facts of the case, adjudge the policy avoided by the inevitable non-payment of premiums? Such a decision would seem to be as unreasonable as unjust.”
This was the first case on the subject in point of time, having been decided in August 1870; but it was not reported until after March 1871, and was not before this court when the case of Manhattan Co. v. Warwick was decided. They may both be regarded, therefore, as cases of the first impression; and there is a remarkable and instructive concurrence, both in the reasoning and results >of the opinions of Judge Robertson in the former case and of Judge Anderson in the latter. Judge Anderson regards the rights acquired by the assured, under the policy, by previous payment of premiums, as vested rights in an entire contract, subject to defeasance or forfeiture hy a failure to continue the payment of the annual premiums; that this payment was necessary to be made under the contract, “in the performance of a condition, to prevent a forfeiture;” and that it would be revolting to our every sense of right — would be “unreasonable, arbitrary and immoral,” either to hold such a contract abrogated by the war, or by the non-performance of a condition which by reason of war became illegal and impracticable of performance. The supreme court of New York take precisely the same view of the contract aud condition. Judge Peckham, delivering the opinion *506 court *n ^ie subsequent case of Sands v. New York Life Ins. Co., 50 New York R., 626, 631-2, says:
“ It is against sound principle, and at war with the lights of the age, that the debts of individuals should be ™Paired by national difierences; debts, be it understood, that existed by contracts made prior to the war. Clarke v. Morey, 10 J. R., 73. This contract of the parties I do not thiuk was nullified by the war. What was it? As-presented in the complaint and found by the referee it is a contract of insurance by defendant for the life of the insured, for the consideration of so much money received and the annual payment of $160 during the continuance of the policy. It was a valid policy ‘for the life of the-insured,’ to become void by the omission to pay the-agreed annuity. In principle I do not see why it is not like a lease or grant of land in fee, reserving rent, fi> become void if the rent be not paid, if the condition subsequent be not complied with. I do not say that it. would bar the plaintiff’s recovery if the contract were as the defendant insists it is. It is enough to say that such is not this contract. The agreemeut is to insure for the life of the assured. Subsequent failure to pay the annuity when.due defeats the policy. It is a condition subsequent, not precedent.”
The supreme courts of the States of Mississippi and New Jersey have also followed and sustained the decision in The Manhattan Company v. Warwick; and it has-been very recently reaffirmed by the unanimous judgment of our own Special Court of Appeals, in the case of The New York Life Insurance Company v. White, in a carefully-considered and well-reasoned opinion by Judge Wingfield. Had these cases been before the Supreme Court of Georgia when the case of Dillard v. The Manhattan Company was decided we think it reasonable- *507 to conclude that the decision would have been different. But, however that may be, there is certainly no apparent reason why we should disregard and repudiate the well-considered decision of our own Supreme court, and follow the unsatisfactory and unsupported decision of the Supreme Court of Georgia. And especially is there little reason to do so, when we consider that the Virginia decision is not only just and reasonable in itself, but is sustained by the unanimous judgment of our own Special Court of Appeals and by the supreme courts of four at least of the other States, being, so far as I am informed, the only other States, besides Georgia, in which the question has been adjudicated.
In support of the decision of this court in the case of The Manhattan Company v. Warwick, we have, then, the decisions of Judges Blatehford and Bond of the Federal courts above referred to, the decision of the Supreme court of Kentucky in New York Life Insurance Company v. Clopton, 7 Bush., 179; the decisions of the Supreme court of New York in Cohen v. New York Life Insurance Company, 50 N. Y. R., 610, and Sands v. same company, Ibid., 626; the decision of the Supreme court of Yew Jersey in the case of Hillyard v. The Mutual Benefit Insurance Company, reported in the second and third numbers of the Insurance, vol. 2, pp. 137 and 175; the decision of the Supreme court of Mississippi in the case of Statham v. New York Life Insurance Company, 45 Miss. R., 58, and the decision of our own Special Court of Appeals above mentioned: Contra, Judge Emmons of U. S. Circuit court and the Georgia case alone.
"Without prolonging this opinion by a comment in detail on these cases, some of which haAre gone farther in the same direction than the case of The Manhattan Company v. Wanoick, and without repeating what is better said in those cases, I feel justified in saying that the proposi *508 tions of law above deduced from the decision of this . , court, in the case oí The Manhattan Company v. Warwick, must be regarded as “res adjudícala,” whether the pay™ent of premiums be treated as in the nature of conditions precedent or not; for, the contract being lawful and merely suspended, but not abrogated by the war, the performance of the condition, which is part of the contract, is suspended also or excused. The language of the Supreme court of New York on this subject in the case of Sands v. New York Life Insurance Co., 50 N. Y. R., above cited, is pertinent and striking. They say, p. 637, “it is equally a condition precedent to a right to recover on a policy that the action shall be brought within the time specified in the policy. The parties have an undoubted right by contract to fix a short statute of limitations obligatory in the given case. Yet war annuls that limitation if necessary, and the action may be brought, wholly irrespective of that provision of the policy. So held in Semmes v. Hartford Insurance Company, 13 Wall., U. S. R., 158, where that was the sole point of the case. If such be its effect upon that provision there is no reason why it shall not save from forfeiture this condition of payment of the premium when due. It is the fault of neither party that it is not paid, and war suspends contracts like this, but does not destroy them.” The opinion of our Special Court of Appeals in N. Y. Life Ins. Co. v. White is to the same effect. I concur in these views and am of opinion that the contract in this case was suspended but not abrogated by the war, and that the rights of the assured under the policy were not forfeited by a failure to perform to the letter the condition of payment of the last premium when due. The performance of that condition was also suspended or excused. But it has been earnestly contended that the judgment is erroneous and should be reversed, because Dr. Atwood was *509 neither beneficiary nor contracting party under the policy in question, and there is, therefore, no right of action in his personal representative. That the only child of marriage having survived his mother, became, by the express terms of the policy, sole beneficiary, and that his personal representative alone could maintain the suit.
The objection struck me at first as presenting a grave difficulty; but upon a more careful consideration I am satisfied that it is not valid. I think, on the facts of this case, that the husband, Dr. Atwood, must be deemed in law the contracting party; and, as distributee of his deceased son, he had long been the sole beneficiary. The policy, it is true, on its face purports to be issued to Sarah Jane Atwood, wife of Dr. Atwood, and expresses that the premium was paid by her; but it is apparent on the record that she was not the acting party, and that no consideration, in point of fact, moved from her. She lived only two years after her marriage, and consequently not less than thirteen of the fifteen premiums settled by Dr. Atwood must have been settled after her death. It is proved by a witness of the plaintiff in error that the policy was issued on “Aaron H. Atwood’s application,” and it is abundantly shown by the same witness and the other proofs in the cause that the premiums were in fact all settled for by him. A contract nominally with the wife, for such consideration and under such circumstances, is in law a contract with the husband, on which ordinarily he may sue in his own name, even in the lifetime of the wife; and of course the right of action survives to him at her death. In May v. Boisscau, 12 Leigh, 512, all the judges were of opinion that an acknowledgment of debt to a wife would at once enure to the husband, and not survive to the wife, unless it appeared on the face of the contract, or *510 otherwise, or by legal intendment, that the consideration , , moved from her — that she was the meritorious cause of the contract; but they held in that case that the court might so intend from the acknowledgment alone, if noth8^011^ appear to the contrary.
In this case it is evident, as I have already said, that . , . ’ , . „ J ’ no consideration moved from the wife. The payments were evidently made by Dr. Atwood, thirteen of them ¿after his wife’s death. In such case my opinion is that it ¡is Dr. Atwood’s contract, on which, without the concurrence of his wife, he could, even if an ordinary contract, sue alone. But if not so, the most that could be said is, that it was a contract which both could sue jointly, and | Dr. Atwood having survived his wife, he became sole ¡contractor, and the legal right to enforce the contract by suit, in either view, was in him, and devolved on his ¡personal representatives.
It is insisted, however, that under the 2d section of chap. 116, Code of 1860, p. 558, a right to sue in his own name vested in the child and passed at his death to his personal representatives; and therefoi’e the suit was improperly brought in the name of Dr. Atwood’s representative.
’Without considering the question argued at the bar, whether on the facts of this case any such right existed in the child, under the statute referred to, as is claimed by the counsel for the plaintiff in error, but conceding the claim, I am still of opinion that such right was cumulative merely; that, like the ease of an assigned bond or note, the original right to sue in the name of the contracting party is not destroyed by the new remedy allowed by statute, but on the coiitrary remains in full force.
It is proper to add, that in considering this question I have been governed by the principles of the common *511 law as enforced in Virginia, there being nothing in the record to show that different rules of law are applicable to the contract in question.
My opinion is, that the judgment be affirmed, with ■costs and damages to the defendant in error.
Anderson and Staples Js. concurred in the opinion of Bouldin J.
Moncure P. and Christian J., whilst they still were of the opinion expressed by them in the Manhattan Insurance Company v. Warwick, yet upon the maxim of stare decisis, they concurred in affirming the judgment in this •case.
Judgment affirmed.