Anderson, J.,
delivered the opinion of the court.
It is now settled by the decisions of this court, in Manhattan Life Insurance Company v. Warwick, 20 Gratt., 614; and in the recent case of Mutual Benefit Life Insurance Company v. Atwood’s adm’x (not yet reported); and also by the decision of the Special court of appeals, in New York Life Insurance Company v. White; the Ins. L. Journal for Dec. 1873, p. 917, that contracts of life insurance entered into before the late war are not abrogated, but only suspended by the war. And with these Virginia decisions the highest judicial tribunals of the States of Kentucky, New York, New Jersey and Mississippi, and the Federal Circuit courts fur the southern district of New York, J. Blatchford, and for the eastern district of Virginia, J. Bond, are in accord.
The Kentucky case was the first in order of time, but had not been reported when the Warwick Virginia case was decided. We had not then heard of that decision, and had not the benefit of the' able and lucid opinion of Judge Kobertson, the distinguished Chief Justice of the ■Court of appeals of Kentucky; though our reasoning brought us to the same conclusions. And it is a source of sincere gratification that decisions so just and so plainly enforcing the rights of destitute widows and or *541 phans have received the sanction, commendation and approval of so many eminent courts, distinguished for their learning and wisdom.
In this case, which is an action of assumpsit, the verdiet of the jury is for $5,000, the whole amount of the insurance. There was a motion for a new trial, which was overruled by the court, and judgment rendered for the amount of the verdict, to w’hich the plaintiff in error excepted, and the evidence is certified as the facts proved in the cause.
The only open question, under the previous rulings of this court, as before recited, is as to the amount of the verdict. It is clearly shown that the assured was willing and anxious, and was prepared to pay the premiums as they fell due, and that they would have been paid if the company had had an agent here authorized to receive them. Vaughan, wlio was their agent before the war, and to whom the premiums had been paid up to the 25th of May 1861, upon printed receipts, signed by the president or actuary, and countersigned by the local agent in the mode prescribed, by direction attached to the policy, was not furnished with such receipts for the premium which fell due on the 25th of May 1861, or for any of the subsequent quarterly payments which fell due in the lifetime of the insured, w'hich, in the absence of any waiver on the part of the company, or of any express instruction to receive payment, must be regarded as evidencing a withdrawal of authority from the agent to receive payment, as was held in White’s case, above cited. In Warwick's case it was held that the payment made to the local agent and accepted by him was valid and binding upon the company, although they had not furnished the printed receipts. But in that case express instructions to the agent to receive payment in the kind of funds in which it w^as paid wrere proved, and upon *542 that ground, and other circumstances in that case, the & ’ , , . , . company was held to have waived the requirement that payment should be evidenced by a printed receipt, signed by the president or secretary. And in that case ^.pe eyi¿ieiice was clear and unquestionable that payment was made to the agent in the kind of funds, or its equivalent, which he was instructed to receive, and that he was prepared to make the remittance to the company by draft on Yew York, as he had been instructed to do, of which the company had notice. There is no such evidence in this case; but the presumption may fairly be drawn from the evidence, that if the company had furnished their agent with the receipts signed by the president or actuary the premiums would have been paid. If we discard all the evidence tending to prove the agency of Vaughan, after the commencement of the war, and his declarations and admissions, the evidence in the record does not' show that the five quarterly premiums which fell due on the 25th of May 1861, and subsequently, in the lifetime of the insured, amounting in all to $150, were paid, unless the company had in its own possession a sufficient amount due the assured in dividends to satisfy them. Whether -the evidence is sufficient to establish such a claim on the part of the assured ■was properly a question for the jury, and whether the evidence warranted the jury to set off the dividends against the premiums or not, it does not appear that they did or did not. They found a verdict for. $5,000, with interest from the 2d day of February 1870.
The court is of opinion that if the assured was entitled to the insurance money, she was entitled to interest upon it from an earlier period than that which is allowed^ by the verdict; and that the interest to which she was entitled, and not allowed by the verdict, will more than compensate for the one hundred and fifty dollars of pre *543 miums. If we assume, then, that no payments were made through Vaughan, pendente bello, and that nothing was due the assured on account of dividends (an tion as to the dividends not warranted by the evidence), it does not appear that the verdict is excessive. It should not therefore be disturbed on that ground.
The court is also of opinion that the court below did not err in giving the plaintiff leave to amend her declaration, and in overruling the demurrer; or in admitting the policy to be given in evidence to the jury, as set out in the first bill of exceptions. It is also of opinion that the declarations and admissions of R. H. Vaughan, as testified to by Mrs. Ilendren, tending to prove his agency, or the payment of premiums during the war, as set out in the second bdl of exceptions, are not necessary to support the verdict or the plaintiff’s right of action; the evidence in the record, exclusive of the declarations and admissions of Vaughan, showing that the verdict is not excessive, and the payment of premiums flagrante bello, not being essential to the plaintiff’s right of action. The company was bound to keep an agent here continuously, to receive premiums and to pay policies. It would be unreasonable and unjust to hold the insured to a forfeiture of his contract, aud of the money he had paid on account of premiums, because he did not pay premiums which he could not pay because of the failure of the company to have an agent here, as bound by its contract, authorized to receive them. If the company was excused for the non-compliance with its contract in this particular, surely the insured would be excused for the non-payment, and could not be held to a forfeiture therefor.
The court is further of opinion, that there is no error in the instruction given, 011 motion of the plaintiff, set out in the defendant’s third bill of exceptions; and that if the principles enunciated in instructions No. 1, 2, 3,4, *544 6, 8, 9, 11, 14, 15, 16, 18, 19, 20, 21, moved by defendant, are true in the abstract, upon which we do not intimate an opinion, it was immaterial to the plaintiff’s right of action whether the agency of Vaughan was continued during the war or not; and the acts, declarations, and admissions of said Vaughan were not material in main-taming the issues on the part of the plaintiff, and the verdict of the jury is well supported by the record if they are excluded; and therefore the refusal to give said instructions, even such as might be right in the abstract, has not been to the prejudice of the plaintiff in error. Nor is there error in the qualification given by the court to the 7th instruction. But the instruction, with or without the qualification, was not material upon the question of the plaintiff’s right of action, nor upon the issues involved. And if it had been given without the qualification, it could not have affected the plaintiffs right of action or recover7, and is therefore an abstraction. Instruction No. 5, so far as it relates to the agency of Vaughan, falls within the principle of the class of instructions before noticed. And so far as it denies to the plaintiff her right to recover, because of her removal from Hampton to Norfolk, and thence to Richmond, is not law, and was properly overruled. The policy, by the contract, was not made to depend upon the insured remaining at Norfolk or Hampton, or his not removing to any other place in Virginia. And there is neither reason, nor law, nor justice in holding that the insurer should hold on to the money he had received from the insured, and be absolved from his obligation of insurance for the term of his life, because when the war broke out the insured did not separate himself from his kindred and friends and throw himself into the arms of their enemies. There is no such stipulation or condition in the contract. It does provide that he shall not pass, without *545 the consent of the company, &c., beyond the settled limits of the United States that lie east of the Kooky mountains, except into the settled limits of the British ■ 1 Vinces, &c., or visit or reside in those parts of the United States which lie south of the southern boundaries of the States of Virginia and Kentucky, between the first cf July and the 1st of Bovember, or enter into any military or naval service whatever, the militia not in actual service excepted. lie was at liberty, therefore, under the contract, to go anywhere he chose, except within the lines prohibited. And he was inhibited from engaging in active military or naval service without the consent of the company. These were the only restrictions touching the point in question, which are imposed on him by the contract. And to hold that his removal from place to place, not within the inhibited lines, or that he did not separate himself from his kindred and friends and throw himself into the arms of their enemies, subjected him to a forfeiture of his contract, not to the government,, but to the defendant, ivould be for the court to insert a clause in the contract of the parties, which they did not put there, to make a contract for them which they did not make for themselves. We are of opinion, therefore, that the court did not err in refusing to give this instruction.
The 10th and 17th instructions are identical, and announce an abstract principle which, we think, under the terms of the act of assembly, is not law, to wit: That “the defendant could not do by an agent what it could not do by itself.” The defendant, in fact, being a corporation could do nothing except by agents. But, if it is meant that this company could not do by its agent in Virginia what it could not do through its New York agent, it is not true. The prohibition of the act of assembly, which was in force at the date of this policy and *546 ever since, is, that no person shall act otherwise than is provided in the second section of the act, as agent for such company, to make or renew, directly or indirectly, any contract of insurance within this State, and any persoi:i resident therein, without complying with the requisitions of this act, or in any way contrary to the true intent and meaning thereof, under the penalty, of $500. (Code of 1860, p. 241, § 82.) The section referred to requires that the company shall appoint some citizen of the commonwealth, resident therein, its attorney or agent-. (§ 24, in the original act § 2.) Thus it appears that the company can only contract through its resident agent in this State, to -whom, by the contract and the statute, premiums are to be paid. (For construction of statute see Warwick & Manhattan Ins. Co., 20 Gratt., supra.) When this company undertook to do business in this State, it was upon the terms of this statute. And those recited show that the company could do by its agent in Virginia what it could not do by its officers or agents of New York. The 12th instruction was given, and, whether right or wrong, cannot be complained of by the company, because given at its instance. The 13th is contrary to the decisions of this court before cited, and we think was properly rejected. The 22d and 23d, so far as they affect the question of Vaughan’s agency, flagrante hello, are not material, it not being necessary7 to establish such agency to entitle the plaintiff to recover. And so far as it asserts that the acting of the insured, as a clerk in the office of the adjutant-general, dissolved the contract, not as an abstract proposition, but in the mode and under the circumstances proved in the cause, it is not true; for it is proved that he was subject to no military order and held no commission or position connected with the military service. We are of opinion, therefore, that these instructions w?ere properly rejected. *547 Upon the whole the court is of opinion that the judg- ^ , ry. , ment be amrmed.
Moncure, P., concurred in the results of the opinion.
Judgment arrirmed.