Anderson, J.,
delivered the opinion of the court.
It must he regarded as settled law, at least in Virginia, that contracts of life insurance entered into' before the late war, by parties who were separated by • the belligerent lines, are not abrogated, but only suspended, by the war. The New York Life Ins. Co. v. Hendren, 24 Gratt. 536; citing Manhattan Life Ins. Co. v. Warwick, 20 Gratt. 614; Mutual Benefit Life Ins. Co. v. Atwood’s adm’x, 24 Gratt. 497; and New York Life Ins. Co. v. White—special court of appeals of Virginia—■ Insurance Law Journal for December 1873, p. 917. These Virginia decisions are in accord with the decisions of the supreme courts of the states of Kentucky,, New York, Yew Jersey and Mississippi, and the Federal circuit courts for the southern district of Yew York, J. Blatchford, and for the eastern district of Virginia, J. Bond.
In the case under judgment one of the policies of insurance was issued by the plaintiff in error on the 10th day of June 1850, for the insurance of the life of Kobert O. Duerson, of Spotsylvania county, in the state of Virginia, in the amount of $2,000, for the term of the whole continuance of his life, in conside- ■ ration of'the sum of $70.20 to the said company in hand paid by the said Kobert O. Duerson, and of the annual premium of $70.20 to be paid on the 10th of *639 June in every year during the continuance of the policy. The other policy, which is also an insurance for the term of the whole continuance of his life, is dated June 9th, 1851, and is for $1,500, in consideration of $54.45 in hand paid and of the annual premium of same amount to be paid on the 9th of June of every year during the continuance of the policy.
The plaintiff in error was an incorporated company of the state of Connecticut, and had an agent, A. Alexander Little, at Fredericksburg, Virginia. The testator of the defendant in error, B. C. Duerson, was a resident citizen of Virginia. The premiums on both policies were regularly and punctually paid to the agent, in the mode prescribed by the policies, by the insured, in fulfillment of his contracts up to the 9th and 10th of June 1861. At those dates the next premiums were due. They were not paid. The late war between the states, at those dates and prior thereto, was flagrant, and separated the home office and domicil of the company from its agent at Fredericksburg, and from the insured, B. C. Duerson, by the belligerent lines. The contract was thereby suspended, the agent of the company having resolved to receive no further premiums after the preceding 4th day of May, which he made known to the public. There is no direct proof that the premiums then due were.tendered by Duerson to the agent. I think the presumption is they were tendered; or, if not tendered, it was because Duerson knew they would not be received, as the agent had stated publicly he would receive no more premiums; and he now testifies that if they had been tendered he would not have received them.
But I do not think it material whether they were tendered or not, inasmuch as the war suspended the contract, and if they had been tendered they would. *640 not have been received. In the Manhattan Life Ins. Co. v. Warwick, supra, it is true we held that a payment tendered to the agent in July 1861, and received by bim, was valid and binding on the company, and that the insured should be credited with it, although the company never received it. But in that case it was shown that the agent had received it in compliance with express instructions from the company, which was therefore charged with it. But in this case there is no special authority given to the agent by the company to receive any premiums during the war, and after the war it refused to ratify his act in receiving payment of a premium from Gordon on the 4th of May 1861. If it had been competent for the agent to receive premiums without special authority, he resolved not to receive them, and it would not be right to hold the assured to a forfeiture of his policies in this case for not tendering them, inasmuch as if they had been tendered, the agent declares they would not have been received, and if they had been tendered and received the company would have refused to ratify it, as is inferrable from the fact, that they disclaimed the authority of their said agent in another case to receive payment of a premium, even at an earlier stage of the war, and refused to ratify it.
But the contract being suspended by the war, all acts which were to be done in its execution were suspended; and the stipulations that the insured should pay the premiums of the 9th and 10th of June 1861, as the conditions of the policies, were suspended.
But this being so, it was obligatory on the insured, if living, to have tendered payment in a reasonable time after the termination of the war. But if the insured had not survived the War, but had died pendente beüo, the case, it seems to me, is different, and the as *641 sured is not liable to a forfeiture of the policy by reason of the failure of the personal representative of the insured to make a tender of the unpaid premiums after the termination of the war. The insurer had in his own hands money due from him to the assured, out of which he was entitled to retain the unpaid premiums, and a tender of them by the personal representative would have been unnecessary if not improper. But the insurer should have been informed in a reasonable time after the war ended of the death of the insured, that he might know what his liabilities were. The non-payment of premiums pending the war, and by reason of its existence, were facts within his knowledge, and need not have been communicated to him by the personal representative, because not necessary to inform him of his liability or its extent.
In this case the insured died March 17, 1868, pendente hello. His wife qualified as his executrix, and died in June 1865, soon after the termination of the war. Letters of administration d. b. r., e. t. a., were granted to her brother, J. O. Cammack, on the 12th of October following; and he wrote to the secretary of the company in January following, informing him of the death of R. O. Duerson from disease. He also informed him of the date of his death, and of whatever it was necessary for the company to learn from him to form a conclusion as to its liability. I do not regard this letter as conceding that there was no legal liability on the company to pay the policy as contended for by its counsel. On the contrary, it seems to me that, according to its natural import, the writer was of opinion that the assured had a claim upon the company, but to what extent, or whether it could be legally enforced or not, he was not informed, and wished to have the views of the company with regard to it. Re *642 lying upon what he had heard as to its liability in other eases, he hoped it would come to just conclusions. I do not think it can be regarded as a surrender in any manner’of any just or legal claim, which, as the personal representative of R. G. Duerson, he had upon the company, though it is not a positive assertion of any legal claim. The company replied through its president, after a delay of some five months, declining to pay anything, and for its conclusion assigns reasons which absolutely ignore the only fact, the existence of the war, which might relieve the insured from a forfeiture on account of the non-payment of premiums, but puts its refusal to páy anything upon the ground of the non-payment of premiums, and upon that ground alone. Eo objection is made upon the ground of delay in communicating the death of the insured, or for the want of a more formal notice of his death, or for the non-compliance with any formal requirement of the policies, but only on the ground of the- non-payment of premiums, which may therefore be regarded as a waiver of such requirements if not strictly observed. It does not appear that Oammack made any response to the said letter.
On the 12th of June 1873, William R. Duerson, son of decedent, qualified as his executor, and on the 1st July following he wrote to said company, informing them that he had in his possession as executor the said policies, and demanding payment. This letter was not answered, and the claims were placed in the hands of an attorney for collection, who, after some correspondence with the company, instituted suit, the company having denied all liability.
I am not aware that the claims in this suit can be defeated on account of delay in their assertion and prosecution by suit, unless it was such delay as would *643 bar the plaintiff’s recovery under the statute of limitations, which is pleaded by the company. And the ■company, under the Virginia act, having a local existence and domicil in this state, for the purpose of being sued, the statute of limitations may be relied on just •'as if the company had been chartered by an act of the Virginia legislature. It is necessary therefore to inquire whether the assured’s right of recovery in this case is barred by the statute.
The questions arising under this head have been ■answered by recent decisions of this court. In Johnston v. Gill, 27 Gratt. 587, it was held that the several acts of the government of Virginia during the war, suspending the statutes of limitations, were valid, to prevent the running of the statute prior to the 3d of Marsh 1866. Consequently the claims involved in this suit were not barred by the statute on the 3d March 1866. And in the Danville Bank v. Waddill, 27 Gratt. 448, it was held that in an action of assumpsit, on the plea of the statute of limitations, the time from the 2d March 1865, to the 1st day of January 1869, is to be left out of the computation by virtue of section 7 of the act of 2d March 1866. The statute could not therefore begin to run before the 1st January 1869, and suit was brought on the 29th day of December 1873, within the five years, so that the plea of the statute of limitations is not sustained.
But it is contended for the plaintiff in error, that if it had a domicil in this state, to the end that it might be sued here, the right of action was not suspended by the war, and consequently the right to collect the premiums, and unless the defendant in error has ■shown a tender to the agent on the day, and refusal, he cannot be relieved from a forfeiture of the policy. 'To this objection, it is only necessary to reply, that it *644 does not lie in the mouth of the plaintiff in error to . put in such a plea, since its agent, after the 4th day of" May, publicly refused to receive anymore premiums, and declares that if the premiums had been tendered by Duerson, he would not have received them. And his determination was not only approved by it, but it actually refused to ratify his act in receiving a premium on the 4th of May preceding.
But it is further contended for the plaintiff in error,, that the judgment of the court below is erroneous for ■ the want of jurisdiction, no process having been served on it,—the service on A. A. Little being futile, as he was not its agent, his agency having been revoked by the war, and also by express revocation after the war was over. But by the express provision of the Virginia act of 1855-’56, it was not authorized to grant policies in this state, or make renewals, until it had appointed an agent in the'way described by the statute,, and was not allowed to revoke the authority of said agent until it had appointed another in his place, as long as §my of its obligations in the state remained unsatisfied. So that by virtue of this act the agency which had been constituted in A. A. Little was irrevocable as long as those obligations remained unsatisfied, no other agent having been appointed by the company.
But it is contended, that said provision of the law not being in force at the time the contracts in question were made, but being subsequently enacted, were not binding upon the company in this ease. The said provisions were amendatory of the previous law, and extended to policies which had been previously made,, as well as those which were made subsequently, and the company by its acts of compliance with its terms and by operating under it, must be held to have ac *645 'cepted its provisions, and cannot now, at this late hour, after having for years carried on its business, and exercised corporate powers and enjoyed special privileges under its provisions, without protest or objection, be allowed to plead that those provisions of the law requiring it to keep an agent here, not only for negotiating new policies, but for executing those which had been previously made, were not binding on it, and that it could, at its pleasure, revoke the authority of. its agent with regard to the fulfillment of its obligations already incurred, without- appointing another in its place. I am of opinion, therefore, that A. A. Little continued to be the agent of the company for receiving the service of the process in this case. Upon the whole, I am of opinion that there is no error in the judgment of the circuit court, and that the same be affirmed.
Judgment arrirmed.