## Richmond.

CLEMMITT AND WIFE V. NEW YORK LIFE INSURANCE CO.

| 76 | 355 |
| f109 | 266 |

March 30, 1882.

1. INSURANCE POLICY—*War.*—Husband took out policy on his life, for his wife, and in case she died before him, then for her children. Premiums paid up to the war. After the war, Ins. Co. repudiated the policy. Then wife died, only one child surviving. Suit was brought by the child, during life of insured, for damages for breach of policy. Pending suit, insured died. At trial circuit court instructed the jury that if they believed from the evidence that the Ins. Co. repudiated the policy during wife's life, action accrued to wife; and, after her death, action survived to her personal representative, and they must find for defendant; and refused to give other instructions.

HELD:

    1. The instruction was erroneous. As soon as wife died, the child's rights vested. After Ins. Co. repudiated policy, wife might have sued, in her own name (Code 1873, ch. 12, § 2), for damages for breach, or await the event on which the sum assured became payable *to her*, if she survived the insured, *to her children*, if she did not survive him.

    2. The war only suspended, but did not abrogate the policy.

    3. The Ins. Co.'s repudiation of the policy after the war, excused thereafter the insured from making any tender of premiums.

2. IDEM—*Breach by Ins. Co.—Measure of damages.*—Where insured is alive at date of judgment, with no decrease of health except from efflux of time, the rule to ascertain value of life policy is laid down in *Universal Life Ins. Co. v. Binford, ante,* page 103. But where breach occurred and suit is brought during insured's life, and he dies before judgment, the value of the policy is the present value, as at the date of the Ins. Co.'s repudiation of the sum assured, and payable at the death of the assured, to be diminished, however, at the same date, by the present value of the premiums subsequently accrued, and also by the amount of the premiums previously accrued (which are unpaid) and interest thereon.

3. EVIDENCE.—Circular issued by Ins. Co. showing its business and mode of doing it, is not admissible as evidence on trial of cause against it for breach of one of its policies.

4. IDEM.—Nor is it admissible on such trial to show by evidence of "general notoriety and common rumor," that the agent of the Ins. Co. refused to receive premiums during the war.

Error to judgment of circuit court of Richmond city in suit of C. W. Clemmitt and Myra P., his wife, who was Myra P., daughter of George W. Minnis, *against* the New York Life Insurance Company. In November, 1857, G. W. Minnis, of Virginia, insured his life with defendant for $5,000 for the sole benefit of his wife, Mary Jane, with the further condition stated in the policy, that, "in case of the death of said Mary Jane before the decease of the said George W. Minnis, then the amount of the insurance shall be payable after her death to her children." Myra P. was her only child. Insured paid the premiums up to the war. Shortly after the war, he, by his agent, went to see the president of the company, who said the policy was annulled by the war and repudiated it. Mary Jane died in 1868. This suit was brought in 1874 to recover damages for the breach of the policy. The insured died in April, 1877, pending the suit, and judgment was rendered March 3d, 1879. At the trial a circular issued by defendants showing the progress of the company, its mode of doing business, &c., was offered in evidence and excluded. So also was a witness offered to prove that it was a matter of general notoriety or common rumor, in Petersburg, Va., where the policy was taken out and the insured resided, that the agent of the defendant there had publicly announced, the first year of the war, that he would not receive premiums for the company during the war.

Instructions were asked for on both sides, viz:

*Plaintiff's Instructions.*

1. The policy of insurance in the declaration set forth did not lapse by the war separating the parties, so that

premiums could not be received or paid as contemplated in that contract. And if the jury shall find from the evidence that, within a reasonable time after the close of the war, the defendant, on being approached by a representative of the beneficiaries of the policy, wholly repudiated the same as a contract binding on it, it was not necessary to make formal tender of the premiums which had accrued during the war, nor of subsequently accruing premiums, to continue the obligations of the defendant under the policy. And if the jury shall further find, from the evidence, that after the death of Mrs. Minnis, on being approached in behalf of Myra P. Minnis, defendant again repudiated the policy as a contract binding on it, because of a supposed lapse by reason of the war, such repudiation was a breach of the contract on the part of the defendant, and Myra P. Minnis had an election to recover her damages for said breach or to wait the maturity of the contract and recover under the same.

2. If the jury shall find from the evidence that there was a breach of the contract, as alleged in the declaration, it is for the jury to assess the damages to the plaintiff by reason of said breach, and the jury may consider the actual period of the death of George W. Minnis in estimating said damages.

3. In the absence of evidence to show a less damage to the plaintiff—the period of the death of George W. Minnis having been ascertained—the measure of damage to the beneficiary named in the policy at the time of the breach would be the then value of a promise to pay the amount of the policy at the ascertained time of the death of Minnis, less the sum of all the premiums which would have accrued up to that time, with interest on the same; and as this balance would carry interest to the time of recovery, substantially the same result would be reached by deducting the whole amount of unpaid premiums at the time of

the death from the whole amount of the policy and adding interest on the residue, to the time of recovery.

And the defendant asked the court to give the following two instructions:

### *Defendant's Instructions.*

1. The defendant asks the court to instruct the jury that, if they believe from the evidence that the defendant repudiated its contract in June or July, that a cause of action then accrued to Mary Jane Minnis, the wife of George W. Minnis, if she were then alive, and that if they believe that she died after the cause of action accrued, the same survived to her personal representative, and not to the plaintiff, Myra P. Minnis, and they should find for the defendant.

2. The defendant asks the court further to instruct the jury that, from the period when the war began until it closed, the contract sued on in this case was suspended, and that as soon as the war closed and communication was reopened between Petersburg, the residence of M. J. Minnis, and New York, the residence of the defendant, it became and it was the duty of the said Mary Jane Minnis, within a reasonable time thereafter, to tender to the company the payment of all premiums due said company, with interest thereon, and unless the jury believe from the evidence that such tender was made in a reasonable time after the reopening of communication, as aforesaid, then they must find for the defendant.

The court below gave the first instruction asked for by the defendant, but refused to give any of the others, and the plaintiff excepted. Verdict and judgment for defendant, and plaintiffs obtained a writ of error.

*Paul & Davis*, for the plaintiffs.

*Johnston, Williams & Boulware, W. W. & B. T. Crump*, for the appellee.

BURKS, J., delivered the opinion of the court.

On the trial of the issues below, the court instructed the jury that if they believed from the evidence that the defendant repudiated its contract in June or July, 1865, a cause of action then accrued to Mary Jane Minnis, the wife of George W. Minnis, if she were then alive, and that if they believed that she died after the cause of action accrued, the same survived to her personal representative, and not to the plaintiff, Myra P. Minnis, and they should find for the defendant. This instruction resulted necessarily in a verdict for the defendant, as the facts left to the determination of the jury, on which the direction was based, were clearly established.

We are of opinion that this instruction is erroneous.

The insurance was for the benefit of the wife and children of George Washington Minnis, not jointly, but separately and contingently. That is to say, the sum assured is payable in the first instance to the wife for her sole use, but by the express terms of the policy, in case of her death "before the decease of the said George Washington Minnis, the amount of the said insurance shall be payable after her death to her children for their use, or to their guardian if under age," &c. The interest of the children by this contract is not under or through the mother, but independently of her and directly from the insurance company. If she had survived her husband, the children's interest would have been defeated. But as she died before the decease of her husband, the interest was shifted to the chil-

dren and rested in them. It may be that she had such an interest under the policy, that when the company, in 1865, denied or repudiated its further obligation under it, she might have been entitled to a remedy, but if so, she certainly had the election either to hold the company for damages, or else await the event on which the sum assured became payable according to the tenor of the policy—that is, payable to her, if she survived her husband, or to her children, if she did not survive him. She took no proceedings against the company after it repudiated its obligation. She merely remained passive, leaving the rights of all parties to be controlled by operation of the law upon the contract. As soon as she died, the rights of the female appellant (her only surviving child) became vested—rights, as before stated, not derived through the mother, but directly from the company under the policy, for the enforcement of which the law gave her a personal remedy in her own name and for her own benefit. If there be any question whether at common law she could, for want of priority maintain an action in her own name (see *Ross* v. *Milne*, 12 Leigh, 204), all doubt is removed by our statute (Code of 1873, ch. 112, § 2), which plainly gives the right.

The beneficiaries had an insurable interest in the life insured. This is not questioned. *Phœnix Mut. Life Ins. Co.* v. *Bailey*, 13 Wall. 616, 619; Bliss on Life Insurance (2d ed.), ch. 2.

For the error in the instruction given, the judgment of the circuit court must be reversed, and the cause might be remanded without saying more, but as there must be a new trial, it is proper that other alleged errors be noticed.

Instructions were asked for on both sides, which were refused. Some of them relate to the effect of the war on the contract of insurance—the insurer and insured not residing during hostilities in the territory and under the dominion of the same belligerent power. We see no ob-

jection to the first instruction prayed for by the plaintiffs. It announces, in substance, the well settled law of this State, that the war did not abrogate but merely suspended the contract (*Manhattan Life Ins. Co.* v. *Warwick*, 20 Gratt. 614; *Mut. Benefit Life Ins. Co.* v. *Atwood's Adm'x*, 24 Gratt. 497; *New York Life Ins. Co.* v. *Hendren, Id.* 536), and the further proposition, equally sound, that the repudiation by the company of the binding force of the contract excused a tender of premiums, and, what may be inferred from the views already expressed, as in our opinion correct, that after the company had repeated its denial of further obligation, the appellant had a right of election between remedies—either to sue at once for damages for the breach of the contract, or to await the event on which the sum assured became payable under the policy, and, when it became payable, to sue for its recovery.

The second instruction asked for by the defendant is objectionable and was properly refused, because it makes a tender of the premiums after the war essential to recovery, though the tender may have been excused by the conduct of the company.

The other instructions have reference to the measure of damages.

If George Washington Minnis (whose life was insured) had continued alive until and after the trial, with no deterioration of health except such as naturally resulted from mere efflux of time, the case of *Universal Life Ins. Co.* v. *Binford and others*, lately decided by this court, *ante* p. 103, would have furnished the rule; or, if the plaintiff had brought her action after her father's death, the amount of recovery would have been easily determined. The difficulty is created by the death occurring after the commencement of the action and before trial. The difficulty, however, is rather apparent than real. The bringing of the suit was the election of the plaintiff to hold the de-

fendant liable for damages for the repudiation of its undertaking. In estimating the damages, we perceive no good reason why the jury may not be allowed to consider the event—the cessation of the life insured—as an element in fixing the *quantum* of damages. It is looked to not as determining the right of action, but as a circumstance and an important one in fixing the amount of recovery. Ordinarily, in estimating the value of a policy on a life in being, we are compelled to consider the duration of life according to the tables of longevity. This results from the necessity of the case. But when the life ceases, there is no occasion for speculation. The event on which the sum assured becomes payable, has actually occurred, and is susceptible of proof. We find no adjudged case precisely in point. *People* v. *Security Life Ins. and Annuity Co.* (decided by New York court of appeals in 1879), 78 N. York Rep. 114, is analogous in some of its features to the case in hand.

The insurance company had been declared insolvent and dissolved under a statute. *After* the decree of dissolution and appointment of a receiver, a policy-holder (whose life was insured in the company) died. One of the questions was, What was the value of the policy and how it should be ascertained? The referee allowed only the reserve value of the policy at the date of the dissolution of the company, computed in the same way as the values of running policies are computed, disregarding entirely the fact of the subsequent death of the assured. This was pronounced erroneous. "The claimant" (says Earle, J., in whose opinion the other judges concurred) "was entitled to be allowed as his damage the value of his policy. There is no statute regulating how such value, as between the receiver and the claimant, shall be determined. The rules by which the referee determined the values of running policies will not in all cases do justice. In some cases

they may give a claimant more damage than he has sustained, and in other cases less. In their general application, however, they will work out results sufficiently accurate for judicial action. In general they furnish the only practical basis of computation, and hence are sustained. But these rules, adopted from the necessity of the case, should not be used when upon facts existing the precise value may be easily ascertained. Their use is not, then, justified by any necessity or consideration of convenience. Here the whole premium has been paid, and at the time when the claim was presented, the precise value of the policy at the time of the dissolution could easily be shown. It was free from uncertainty or speculation. The amount insured was payable ninety days after the proof of death; and the present value of that sum on the 14th day of December (the date of the dissolution) was the value of the policy, and that value could be ascertained like the present value of any certain sum of money payable at a definite future day."

And so we say in the present case, the value of the policy is the present value as at the date of the repudiation of the contract by the company of the sum assured and payable at the death of the person whose life was insured, to be abated, however, by the present value at the same date of the premiums subsequently accrued, and also by the amount of the premiums previously accrued (which are unpaid), and interest thereon. The present value of the sum assured, thus ascertained and abated, with interest from the date of the repudiation of the contract, would seem to be the just measure of recovery in this case.

The demurrer to the declaration was properly overruled. Though quite loosely framed, the declaration is deemed sufficient in substance.

Nor do we think that the bills of exceptions to the ruling

of the court, excluding certain evidence offered by the plaintiffs, disclose any error.

The evidence set out in the first bill was clearly irrelevant, and no citation of authority can be necessary to show that the fact mentioned in the second bill cannot be proved, as was proposed, by evidence of "general notoriety or common rumor."

The judgment of the circuit court will be reversed and the cause remanded, and upon a new trial had, as ordered, that court will be governed by the views and principles herein declared.

JUDGMENT REVERSED.