Anderson, J.
In July, 1869, Christopher W. McLean, who is plaintiff in error, and was plaintiff in the court below, and sued for the benefit of Eliza W. Bisseíl and J. E. Darrow, obtained from the defendant a policy in the amount of five thousand dollars, assuring the life of Wiley E. Higgins, of North Carolina, for considerations and upon conditions therein expressed, for the term of the said Higgins’ life. This contract of assurance was made at the defendant’s agency, at Newborn, in North Carolina, and was made with its agent there, T. D. Carraway.
On the 33d of March, 1870, McEean assigned the policy to his mother, Mrs. Eliza W. Bissell, all the premiums being then paid up; and on the 27th of May, 1873, Mrs. Bissell assigned it to J. E. Darrow, a resident of the city of New York, all the premiums then being paid up. Both assignments were made with the knowledge and assent of the defendant. All the premiums were paid to the said T. D. Carraway, and the receipts, in which a clause was inserted “not binding until countersigned by D. T. Carraway,” were signed by D. J. Hart-sook, secretary, and countersigned by D. T. Carraway, agent; which establishes the agency of Carraway. After the assignment to J. E. Darrow he continued the payment of the quarterly premiums to Carraway at Newbern, North Carolina. Carraway would send him a statement of the premium shortly before it was due, and he would immediately enclose him a bank check to pay it, and then Carraway would send him the company’s printed receipt for it, signed by the secretary, and countersigned by himself as agent. The last remittance Darrow made him was a bank check to pay the premium for July 33d, 1874. For this remittance Carraway never *sent him a receipt; and although he repeatedly wrote to him, he never heard from him again. In the uncertainty and distrust which this occasioned, he omitted to remit to him the premiums of October, 1874, and of January, 1875; but on the 30th of the last named month, wrote direct to D. J. Hartsook, secretary, at Richmond, and enclosed him a bank check for $75 to pay premiums, and requested him to enclose him the company’s receipts.
His letter was answered by J. J. Hopkins, assistant secretary, who informed him that his policy had lapsed and was cancelled because the premiums due July, 1874, had, not been paid, “and (he says) must be reinstated before we can receive the premium. We enclose one of our forms of reinstatement, which you can send him (Iiiggms) and get him to have filled up and return to this office. If approved we will send you the receipts, othei-wise return you the money. Fn the meantime we will place the check to your credit and subject to your order. If the policy is reinstated you can pay in future at the New York agency.”
The forms of reinstatement that he speaks of consist of a formal written application, in which the assured solemnly certifies not only as to his own¡ health, that no circumstance has arisen since the issuance of the .policy, and none now exists as to his health or habits, to make his risk less acceptable than when first assured, but also as to the health of his family, and that no hereditary taint or disease has exhibited itself in any member of it, besides various concessions as to liabilities and rights are required; which is to be accompanied with a medical certificate of the most searching and stringent character.
Mr. Darrow made no reply to this com-municalion, and did not avail himself of the forms of reinstatement, if they were sent him, but waited in silence until the new quarterly premium would be soon due, and then, July *lst, 1875, enclosed to him a bank check for fifty dollars to pay premiums. The check was returned by Hopkins with a reiteration that the policy was cancelled, and that it may be reinstated by payment of bank premiums and medical examination.
Mr. Darrow then sent his attorney, Mr. VanCott, of New York, to Richmond, to have an explanation, and if he could, an adjustment of the difficulty. Mr. VanCott testifies, that on being introduced to Mr. Hopkins he stated the nature of his business; that he had been sent there to adjust some differences which seemed to exist between Mr. Darrow and the Piedmont and Arlington _ Company. _ “The company claimed that Higgins’ policy had lapsed in July, 1874, and Darrow claimed that it had not. *460 He says I produced a check with the endorsements thereon (which he gives and which are inserted in his deposition,) showing that the July, 1874, premium had been paid, but that Mr. Darrow had no receipt for the payment except the endorsement of Carraway on the check. This (he says) was very satisfactory to Mr. Hopkins, and he said it was all right. After a few minutes he said the policy had lapsed in October, 1874. I told him that Mr. Darrow had made every effort he could to find Carraway, and showed him copies of letters sent, being the same letters that are set out in the testimony of Darrow, and that after Mr. Darrow found that he could not find Carraway, he sent his check for $75 to the company, and they still had the money. He then told Mr. Iiill to make up a statement; Hill did so, and we found that Darrow had paid up to July, 1875, and over and above; that there was a balance of three dollars and some cents to Darrow’s credit. Mr. Hopkins then said that if the policy had lapsed he was satisfied that it was not the fault of Darrow, and that Darrow had acted in perfect good faith in the matter. And Hopkins then and there agreed with me that *the policy should be reinstated or continued in force the same as if nothing had happened, as he was satisfied of Darrow’s good faith in the matter. Nothing was said about Mr. Higgins’ health while I was there. * * Hopkins seemed perfectly surprised when I showed him the check that had been, paid to Carraway, and which Carraway had failed to pay over to the company, and said that explained the whole matter. He said further that the company had had trouble with-Carraway before, and had sued him in another matter, and was going to sue him.
“Mr. Hopkins said he was satisfied the company had made a mistake, and that the policy had not lapsed in July. The company had claimed all along that the policy had lapsed in July (that is the ground assumed by Mr. Hopkins in his letter of February 1st, 1875), and the idea that it had ever lapsed in October was never mentioned until after I had shown Hopkins that it had not lapsed in July. But after the clerk made out a statement showing that Darrow’s $75, paid up to July 23d, 1875, and after assuring Mr. Hopkins that Darrow had been acting in the utmost good faith in everything that he had done, without any hesitation he said he would waive their rights, or waive the lapse, and reinstate the policy as it had formerly been, or words to that effect."
Upon the case as. now stated two questions arise:
First. Was the policy forfeited hinder the circumstances by the non-payment of premiums?
Second. If forfeited, has the forfeiture been waived?
Upon the first, has there been default in the non-payment of premiums by Darrow? Where and to whom was he to pay the premiums? The contract was made in New-bern, North Carolina, where the company had an agency. It was a North Carolina contract; and it would seem that the obligation, and consequently the right, was to pay there, as was held in Manhattan Life Ins. Co. v. *Warwick, 30 Gratt. 614, as to contracts made in Virginia, that they were payable in Virginia. And to whom were the premiums payable but to the 'recognized agent of the company, Carraway, at Newbern. To him, and there, the payments- were made by McUean, and by his assignee, Mrs. Bissell, and by her assignee, Mr. Darrow, up to July, 1874, with the approval of the company. To him Mr. Darrow made a remittance of the premium which was due in July, 1874, which he received, but did not pay over to the company. The company up to the 15th of July, 1875, were not aware of that payment, and believing that Darrow had been in default, cancelled the policy on its books; and its organ, the assistant secretary, tells Mr. Darrow as late as February 1st, 1875, that the policy has lapsed because of the nonpayment of that premium, and that no premiums can be received on it until it is reinstated. If Darrow was under obligation to pay the premiums to the North Carolina agent, in North Carolina, it was not lawful for him to pay anywhere else without the permission of the company. Both parties seem to have so understood it; for Darrow, wishing to make his future payments at the New York agency, deemed it necessary first to get the permission of the company, and the company gave him permission. Well, if it was the right and the duty of Darrow to pay the premiums to the North Carolina agent, at Newbern, he knew of no other agent there than the one to whom he, and those before him, had paid every premium that had fallen due, with the approval of the company: namely, D. T. Carraway. But after the last payment he had made to him, he had good grounds for distrust whether it would be safe for him, or the company, that he should make further remittances to him until, he heard from him and the cause of doubt and distrust had been removed. But he had no knowledge of his removal from his agency. He had no *knowledge of any other agent of the company in North Carolina, where payment had to be made. He had never been notified by the company of the removal of Carraway, and of another agent being substituted in his place, to whom his premium could be paid. He was in another state, at a great distance from the North Carolina agency, and knew nothing of what was going on there. He still regarded Carraway as the agent of the company to whom his payments had to be made. But as he had not sent him a receipt for the premium of July, and had not sent him a statement, as he was wont, of the next premium that was due in October, although he had written to him for it; and as he could not get a line from him in reply to his repeated and earnest letters, as a prudent man he did not think it proper to make a remittance of money to him; and finally, after the January premium was past due and he had *461 heard nothing of Carraway, he determined to communicate direct with the secretary of the company, at its chief office, though in a different state from that where the contract was made and the premiums were payable, and remitted to him a check for $75 to dispose of, so as to satisfy the premiums to the company and to protect him.
Rut if it should be said he ought to have done it sooner, it is at least doubtful whether the obligation was on him to do it at all; and whether it was not the duty of the company, when they removed their agent, to have notified him of it, and to have informed him to whom he should make payment thereafter. If that had been done, there never would have been any difficulty. T'or it is perfectly manifest upon the face of the record, that Darrow was always prepared and anxious to pay his premiums according to the requirements of his contract. And if he had ever failed to come up to the exact requirement, it was because he was led into error by the *agent of the company, upon whom he relied for information and direction as to the requirements of the contract.
But there is no question as to the regularity of those payments; they are all admitted; and Darrow was in no default in the payment of the July premium. But the company had determined otherwise, and had cancelled his policy on that account. If he had remitted to J. J. Hopkins at Richmond, he would not have received it. For as late as the 1st of February, 1875, he refused to receive any premium upon the ground that the policy had been cancelled for ihe non-payment of the July premium. And if he had remitted the January, 1875, premium, it would have been the same. As long then as the company assumed that position, there would have been no use in remitting any ol the premiums subsequent to July to the chief office of the company at Richmond. It is true that the company has changed its views. It admits its mistake. It admits that the July premium was paid to their agent, and is lost to the company, unless ifi can be made out of Car-raway. But it did not come to this conclusion until long after the January premium was past due; not in fact until the 15th of July, 1875.
But suppose he had remitted the October and the January premiums to Carraway, of whose removal from the agency he was not informed. His obligation, as we have seen, was to pay to the North Carolina agent, and he was not informed that there was any other. And it just occurs to me that the company itself has shown that it regarded Newbern as the place where, and Carraway the agent to whom, the payments were to be made, by an incident disclosed in the record. A remittance of the premium was made by Darrow, by mistake, to the office al Richmond, and the company there, instead of retaining it and sending him a receipt for it, forwarded it to Newbern,
N. C., and he received a receipt for it !|!in proper form from Carraway. And supposed he had remitted the ore-miums of October and January following to Carraway, not knowing that he was,, not still the agent, it would have been th«¿ loss of the company, or his own loss — probably the former, as they have conceded as to the July premium. It would certainly have;been no advantage to the company. It was necessary that the company should have had an agent at Newbern authorized to receive the premiums before the assured could be held to a default for their non-payment. And it would seem that their known agent, to whom payment of the premiums had been uniformly made, from the time of the issuance of the policy, having been removed and another substituted in his place, it was the duty of the company to _ have notified Darrow, who lived in a distant state, and could not be presumed to have known of the change and to whom he should thereafter make payment. Upon a contract to pay on a certain day, upon condition of a forfeiture for default, if the payer is prevented by the act or non-action of the party who is to receive payment from making the payment ad diem, or if the payer incapacitates himself to receive, or the other party to pay, the forfeiture fails.
But whether it was a forfeiture, depended upon the facts; and whether the facts were proved which would establish a forfeiture, was a question for the jury. Without now deciding that question, we are of opinion that it would have been proper for the court lo have instructed the jury that if they believed from the evidence that the facts were so and so, it was a forfeiture; and if they believed them to be thus and so, it was not a forfeiture. But to instruct them that upon the facts proved the assured had forfeited his policy, was to decide the facts of the case and to invade the province of the jury. For this reason we are of opinion that the first instruction *given by the court, and all the instructions given, which were consequential upon it, were erroneous and ought not to have been given.
If Darrow had been in such default as would entitle the company to insist on a forfeiture, has it waived that right, and is it estopped now to assert it?
It seems to be well settled that it is a right which the company may waive. The doctrines on this subject are clearly stated in a well considered oninion by Judge Burks in Georgia Home Ins. Co. v. Kinnier’s adm’x, recently decided by this court. 28 Gratt. 88. In that case the court held that conditions in a policy, which are for the benefit of the insurer, and the breach of which is visited with forfeiture, may be waived by the insurer or his lawful agent. And numerous authorities are cited in the opinion in support of the decision, which are here referred to. The Chicago Life Ins. Co. v. Anna M. Warner, 70 Illi. R. 410, clearly maintains the same doctrine. The decisions of this court in the more recent case of Southern Mutual Ins. Co. v. Yates, maintains the same principle. 28 Gratt. 585. Judge Staples, who delivered the opinion, *462 says (p. 597), “if the defendant, with knowledge of the existence of the incumbrance, knowingly received assessments upon the note involved in the controversy, such conduct would amount to a waiver of the breach of warranty, whether so intended or not.” Here it is held that even a breach of warranty may be waived by the acts _ of the warrantee. The waiver may be made either by the conduct and acts of the 'party for whose benefit the condition or warranty is made, or by agreement express or implied.
In the case under judgment there is proof tending to show an express agreement by the defendant to waive the right to avoid the policy, because of the non-payment ad diem of the quarterly premiums, due 22d of October, *1874, and 22d of January, 1875, and that the policy should continue in force as if nothing had happened. Whether there had been such a waiver was a question of fact for the jury. And the court ought to have instructed the jury that if they believed from the evidence that Darrow had failed to pay the quarterly premiums ad diem on the 22d of October, 1874, and the 22d of January, 1875, when they respectively fell due, and that by reason thereof he had forfeited his right to the policy, but further believed from the evidence that' the defendant had waived, or agreed to waive its right to the forfeiture, and received the back premiums from the assured or Darrow, which were paid on the faith of the waiver, they should find for the plaintiff.
But instead of giving such, instruction, the court instructed the jury as follows: “That the printed receipts for the payment of .premiums over due, delivered by the assistant secretary to’ the plaintiff's attorney in July, 1875, and exhibited by the plaintiff to the jury, are evidence which cannot be contradicted or varied by parol testimony, of the contract upon which' the defendants agreed to reinstate the policy.” It is not to be doubted that cotemporanequs parol evidence is inadmissible to vary or contradict the terms, or the legal import of a valid written contract, unless in the case of fraud, accident or mistake. Towner v. Lucas’ ex’or, 13 Gratt. 705. But that is not this case. The parol evidence was introduced for no such purpose; but to prove that the defendants’ agent had waived any right he had to a forfeiture, not considering that the company was entitled to it when the facts of the case were understood by him, and that it would be unjust to Darrow, who he said was not to blame, but who had acted in good faith, and agreed t© receive the money which had been previously remitted to him in payment of the back premiums, and *that the policy should continue in force as if nothing had happened; .that he would waive the lapse and reinstate the -policy as it had formerly been. In 'a short time the receipts were prepared and handed by Mr. Hopkins to Mr. Darrow’s agent, sayin'g that now everything was all right. They were not read to the agent, and were not read by him. He received them as the .company’s receipts for the back premiums, and did not know, hadn’t a thought that they were anything else but receipts for the money paid, or constituted a contract, or any evidence of a contract, and of a contract by which Mr. Darrow was bound to guarantee the present good health of Higgins in very stringent terms. No such contract had been made between them, nor intimation by Hopkins that such terms would be required. Nothing had been said as to the health of Higgins, but upon being put in possession of the facts of the case, which he had not known before, he thought it would be unjust to Darrow to insist upon a forfeiture, and agreed to waive it. This is substantially the plaintiff’s testimony.' Mr. Hopkins knew that Darrow was unwilling to make application to have the policy reinstated upon the terms provided by the policy for reinstating lapsed legacies; for he had sent him, before he himself was informed of the facts, the forms for its reinstatement, which Darrow would not have executed, but remitted him money to pay the next premium before it was due; by which he had reason to know that he did not regard his policy as lapsed, and was not willing to have it reinstated on the terms which Jie, Hopkins, proposed; and after the explanation he received from Mr. Darrow’s agent he himself was satisfied, and so expressed himself that the company had made a mistake in cancelling the policy on its books as a lapsed policy for the non-payment ®f the premium of July, 1874; and upon the whole case, as he then understood it, was satisfied that the policy *should continue in force just as if nothing had happened, and so expressed himself to Darrow’s agent, without intimating that he would still insist upon a medical examination of Higgins, as he had done before he was informed of the facts; but agreed to receive payment of the premiums, - which before this he had refused to do without a medical examination, and directed the receipts to be filled up.
Each of the five receipts contained the clause guaranteeing the health of Higgins —the receipt for the premium due in July, 1874, as well as the others — although he admitted, and now admits, that that premium had been paid in due time, and that there was no default in its payment which should cause a lapse of the policy. If the receipt with the objectional clause was given for that premium for the reason, which he assigns, that he had no printed receipts in hand which did not contain that clause, for the same reason he had to use them in the other cases. The receipts thus handed to Mr. VanCott, he handed in a bundle, which ha’d been unopened and never examined by him, to Mr. Darrow, telling him that the whole matter had been most satisfactorily adjusted, and there were his receipts. And Mr. Darrow testifies that he received them as receipts, and never opened them of examined them until he received a receipt for the next premium, in which he found the objectionable clause. The others were then examined by- him and Mr. VanCott, and to *463 their great surprise, they found the same objectionable clause in each of them; and Mr. Hopkins was informed that they never made any such contract, and would not be bound by it.
Now, the question is, Did Mr. Darrow ever make such a contract? Do the receipts evidence any contract made by him? He never signed them. The only ground upon which it could be claimed to be his contract, is, that the receipt was delivered to his agent, and his ■ receiving _ *it would imply that he approved of it. _ But how _ could this implication be made, if it was delivered to him merely as a receipt for the money he had paid, and he never read it, nor was it read to him; and he was not told that it contained in addition to the receipt, a clause evidencing a contract, and when he knew he had made no contract and no contract had been proposed; but what had previously passed between him and the company’s agent was calculated to impress on his mind that they were merely receipts, and nothing had passed that would suggest to his mind that the papers handed to him as receipts might contain a clause evidencing a contract between the defendant and his principal?
If this evidence is to be believed (there is conflicting evidence, and it was a question for the jury, and the court does not intend to intimate an opinion on that point,) it would be a gross fraud upon Darrow to set up these receipts as evidence of a contract between him and the defendant. And the authorities uniformly hold that parol evidence is not inadmissible to contradict the terms of a written contract, where there is fraud. It is only inadmissible to contradict or vary the terms of a valid contract. But in this case it is not offered to contradict or vary the terms of the written contract of the party who offers it, but to show by independent facts, dehors the instrument, that it is not his contract. Insurance Company v. Mahone, 21 Wall. U. S. R. 152, is a case in point, and fully supports this position. Mr. Justice Strong, speaking for the whole court, says: “The testimony was admitted, not to contradict the written warranty, but to show that it was not the warranty of Dillard, though signed by him.” There the instrument was signed by the party; here it was not. This case is stronger than that in favor of the admission of parol testimony. Insurance Company v. *Wilkinson, 13 Wall. U. S. R. 222, is also a strong case in point.
Towner v. Lucas’ ex’or, supra, does not militate against the admissibility of (he parol evidence in this case, but is authority for it. Allen, J., says, p. 715: “I can find no case which determines that oral cotem-poraneous evidence is admissible to contradict the terms of a written agreement, or substantially vary the legal import thereof, provided the instrument was a valid instrument and the party designed to execute _it in its existing form. The fraud which will let in such proof must be fraud in the procurement of the instrument, which goes to its validity, or some breach of confidence in using a paper delivered for one purpose and fraudulently perverting it to another. In such cases the oral evidence tends to prove independent facts which, if established, avoid the effect of the written agreement by facts dehors the instrument, but do not tend to contradict or vary it.” The doctrine thus clearly enunciated by that able jurist, covers this case. It could not be more appropriate if it had been written expressly for it. In The Southern Mutual Ins. Co. v. Yates, supra, there was no fraud, or imputation of fraud, or of any breach of confidence in usi-ng a paper delivered for one purpose and fraudulently using it for another.
Upon the whole, the court is of opinion to reverse the judgment of the circuit court, and to remand the cause for further proceedings to be had therein in conformity with this opinion.
Staples, J.
I do not concur with Judge Anderson in the opinion that the policy was not forfeited by the failure to pay the premiums. I think the judge of the circuit court did not err in his instruction upon this point In my opinion there was no sufficient evidence in the case to *justify even the submission of the question to the jury whether the policy was or was not forfeited.
I do concur, however, in that portion of the opinion relating to the waiver of the forfeiture. If the plaintiff’s version of the transaction be correct, and there was an unconditional waiver of the forfeiture upon sufficient consideration and under the circumstances described, it was a fraud upon the plaintiff to insert in the receipts a conditional waiver. Upon this point the evidence was very conflicting. The plaintiff had the right to have the whole question submitted to the jury. 1 think, therefore, the judge of the circuit court erred in not so instructing the jury.
Burks, J., concurred in the results of the opinion of Anderson, J.
Christian, J., dissented.
The judgment was as follows:
The court having maturely considered the record in this cause, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in excluding from the jury all parol evidence tending to prove a waiver by the defendant of a forfeiture by Darrow, the assignee, of the policy, and in its instruction to the jury that such testimony was inadmissible. It is therefore ordered that the judgment of the circuit court be reversed and annulled, and that the defendant pay to the plaintiff his costs expended in the prosecution of his appeal here. And the cause is remanded for further proceedings to be had therein in conformity with this order.
Judgment reversed.
(See note on Fire and Marine Insurance, Mutual etc., Co. v. Holt. 29 Gratt. 612.)
LIFE AND ACCIDENT INSURANCE.
A. The Contract.
I. Eife Insurance.
1. Definition and Nature.
2. Insurable Interest.
(1) In General.
'(2) Parent in Life of Child.
(3) Building Association in Eife of Member. (.4) Assignee.
(5) Where Not Necessary.
(6) When Insurable Interest Must Exist. *
3. Application.
(1) Where Made Part of Policy.
a. In General.
b. Under Statutory Enactment.
(2) Where Policy Contains Incontestable Clause.
4. Payment of Premium.
(1) In General.
(2) Payment Prevented by Insurer.
(3) Payment Prevented by War.
(4) Extension of Time.
(5) Evidence of Payment.
5. Beneficiary.
6. Assignment.
7. Voluntary Conveyance of Policy.
8. Suicide.
9. Proof of Eoss.
10. Agents.
II. Construction.
12. Evidence.
(1) Fraud.
(2) Assessments.
(3) Parol Evidence.
13. Foreign Insurance Companies.
(1) Attachment.
a. In General.
b. Measure of Recovery.
(2) Garnishment.
(3) Eicense Tax.
(4) Conflict of Eaws.
II. Accident Insurance.
1. Definition.
2. Voluntary Exposure.
3. Bodily Infirmity.
4. Asphyxiation — Instructions.
5. Injuries Received in Discharge ©f Duty.
6. Rules of Construction.
(1) In General.
(2) Insufficient Statement Not Demurrable.
(3) Equitable Set-Off.
B. Pleading and Practice.
I. Suits in Equity.
1. Clearness.
2. Multifariousness.
3. Right to Trial by Jury.
4. Dismissal of Suit.
5. Bill of Review.
II. Actions on Policy.
1. Who May Sue.
2. Where Action Brought.
3. Service of Process.
(1) Domestic Companies.
(2) Foreign Companies.
4. Declaration.
(1) Statutory Form.
(2) What Must Be Averred.
(3) Demurrer.
(4) Amendment.
5. Recovery by Motion.
6. Foreign Companies.
(1) Removal of Cause.
(2) Writ of Error. __
A. THE CONTRACT.
I. Life Insurance.
1. Definition and Nature. — “Insurance upon life is a contract whereby the insurer, in consideration of a certain premium, either in shape of a gross sum or by annual payment, undertakes to pay to the person for whose benefit the insurance is made a certain sum of money or an annuity, on the death of the person whose life is insured. If the insurance be for the whole life, he undertakes to make the payment whenever the death occurs; if otherwise, he undertakes t© make it in case the death should happen within a named period, for which period the insurance is said to be made.” 3 Min. Inst. (2d Ed.) pt. 2, p. 1189.
The contract of insurance is not a contract of indemnity for a definite period, as a policy against fire, but it is a contract to pay a certain sum of money, for the consideration mentioned, upon the happening of an event, which is inevitable, and only uncertain as to the time it may transpire. Manhattan Life Ins. Co. v. Warwick, 20 Gratt. 614, 3 Am. Rep. 218.
The application for insurance is a mere proposal on the part of the applicant. When the answer signifies the acceptance of it to the proposer, and not before, the minds of the parties meet^ and the contract is made. If anything remains to be done, if the agreement is not consummated, if all the terms have not been mutually agreed upon, no contract arises between the parties. McCully v. Ins. Co., 18 W. Va. 782.
2. Insurable Interest.
(1) In General.—In Roller v. Moore, 86 Va. 512, the court, quoting from the opinion of Mr. Justice Field in Warnock v. Davis, 104 U. S. 779, says: “It is not easy to define with precision what will, in all cases, constitute an insurable interest. It may be stated generally, however, to be such an interest, arising from the relation of the party obtaining the insurance, either as creditor of, or surety for the assured, or from ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and a child in the life of his parent; a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful to protect the life of the assured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood, or affinity, to expect some benefit or advantage from the continuance of the life of the assured.” See also, Tate v. Building Ass’n, 97 Va. 74, 5 L. R. A. 257; Richards on Insurance, sec. 27; May on Insurance, sec. 102; Conn. Mut. Life Ins. Co. v. Luchs, 108 U. S. 498.
As to the nature of a creditor’s policy of life *465 insurance and the quantum of the insurable interest, see extensive note, 5 Va. Taw Reg. 801.
(2) Parent in Life of Child. It is well settled that a father has an insurable interest in the life of his child, and the child in the life of his father. Valley Mut. Life Ins. Co. v. Teewalt, 79 Va. 421.
(3) Building’ Association in Life of Member* — A building association has no insurable interest in the life of a member who is in no wise indebted to it; and the fact that the member becomes surety for the association does not create an insurable interest. Tate v. Building Ass’n, 97 Va. 74.
(4) Assignee. — An assignee of a policy having no insurable interest in the life of the insured can only retain so much of the proceeds, where the insurance was lawfully effected, as is necessary to reimburse him for the premiums paid, expenses incurred, and interest thereon. Tate v. Building Ass’n, 97 Va. 74; Roller v. Moore, 86 Va. 512; Long v. Meriden, Britannia Co., 94 Va. 594, 3 Va. Law Reg. 287, 832; Beaty v. Downing, 96 Va. 451; New York Life Ins. Co. v. Davis, 96 Va. 737.
In order to constitute a valid assignment of a life policy, the assignee must have an insurable interest in the life of the insured. Roller v. Moore, 86 Va. 512.
(5) Where Not Necessary. — '“The necessity of insurable interest in the life of another person to sustain a life policy is held, in Union Fraternal Teague v. Walton (Ga.), 46 L. R. A. 424, to be inapplicable where a person lawfully procures insurance upon his own life for the benefit of another person, and does so at his own expense.” 5 Va. Law Reg. 868. See also, note, 25 L. R. A. 627.
(6) When, the Insurable Intci'est Must Nxist. — In fire and marine insurance the insurable interest must exist both at the commencement of the risk and when the loss occurs; but in life insurance it may exist when the policy was taken out or at any time thereafter. Hence, a creditor holding a policy taken out by himself on the life of his debtor would be entitled to recover the amount of the policy, even though the debt should be paid in the meanwhile. Any other rule would practically destroy the value of life insurance as security for debts. “This striking difference,” says the editor, in 3 Va. Taw Reg. 833, “between the interest which is required to support a contract of life insurance and that required in contracts of fire and marine insurance, grows out of the fact that the latter are contracts of indemnity, pure and simple. The loss may happen or it may not. A contract of life insurance on the other hand is not a mere contract of indemnity. In contracts of -fire and marine insurance, the insurer does not contemplate that he will be called to pay anything; for a small premium he takes the chances of having to pay a large sum or nothing; and it is only in a comparatively few cases that he makes any return to the insured for the premiums received. On the other hand, in life insurance contracts, the loss in every case is certain; it is contemplated as a certainty at the very inception of the contract, and the only questions are, how long before it will occur, and what amount, paid by the assured annually during the life, will place in the coffers of the insurer an amount sufficient to pay the loss and leave a profit besides. And, as life insurance is conducted as a money-making enterprise, and not from motives of benevolence, it is clear that in the majority of cases the insured really pays in more than he receives. If, therefore, the contract is one of indemnity at all, the indemnity for which the insured contracts is not only in respect of his interest in the life, but in respect of the premiums annually paid. And though the interest in the former may cease, the interest in the latter continues. The subject is learnedly discussed by Judge; May, in his work on Insurance (3d Ed.) secs. 100-117.” See Long v. Meriden Britannia Co., 94 Va. 594, 3 Va. Law Reg. 287, and note, p. 382; Richards on Insurance, § 30; Conn. Mut Ins. Co. v. Schaefer, 94 U. S. 443.
3. Application.
(1) Wliex’e Made Part of Policy.
a. In General. — ’Where the application for a life insurance policy is made a part of the policy and its statements are deemed warranties, a false statement therein, whether material or not, will avoid the policy. Metropolitan Life Ins. Co. v. Rutherford, 95 Va. 773, 5 Va. Law Reg. 842, and note, p. 846; Home Ins. Co. v. Sibert, 96 Va. 403, 4 Va. Law Reg. 494.
A breach of the warranty contained in the application, that no proposal or application to insure the life of the applicant had ever been made to any company or agent upon which the insured had been rejected, or upon which a policy had not been issued and received by him, avoids the policy. Nat. Life Ass’n v. Hopkins, 97 Va. 167.
If insurance be effected upon the life of a debtor for the benefit of his creditor, and misrepresentations of material facts inducing the contract be made by the debtor, the policy will be vitiated, although the beneficiary was ignorant of‘such misrepresentations. Burruss v. Ins. Co., 96 Va. 543.
Section 3252 of the Code of Virginia, as to the size of type in which the conditions and restrictive provisions shall be printed, applies alike to the application and the policy, where the application is expressly made a part of the contract of insurance. Burruss v. Ins. Co., 96 Va. 543.
If by the contract and policy the applicant warrants his answers to be true in all respects, then this removes their materiality from the consideration of the jury or of the court; and if the answers are any of them untrue, though they be such as the court or jury might believe could not have prejudiced the defendant or in any degree influenced him in entering into the contract or issuing the policy, yet the insured, or person for whose benefit the policy was taken, cannot recover upon it. Schwarzbach v. Valley Protective Union, 25 W. Va. 622.
1». Under Statutory Enactment. — In Virginia it has been provided by Act of Assembly approved February 26th, 1900, that no answer to any interrogations made by an applicant for a policy of insurance shall bar the right to recover upon any policy issued upon such application, by reason of any warranty in said application or policy contained, unless it be clearly proved that such answer was wilfully false or fraudulently made, or that it was material.
12) Where Policy Contains Incontestable Clause. — It seems that where the policy contains the incontestable clause, the company cannot set up fraud or false statements in the application, or suicide of the insured. See extensive note on the Incontestable Clause, 42 L. R. A. 247.
“A provision that a life insurance policy shall be incontestable after one year, is held, in Clement v. New York Life Ins. Co. (Tenn.), 42 L. R. A. 247, to be neither unreasonable nor contrary to public policy, but while it is held applicable to fraud in procuring the policy, it is held inapplicable to the defense that the plaintiffs had procured the issue of the policy and its transfer to them as a speculation, and *466 that it was therefore a gambling or wagering contract.” 4 Va. Law Reg. 777.
4.Payment of Premium.
(1) In General. — Payment of the premium is of the essence of the contract of insurance. Punctuality in such payment is essential. A failure to pay within the specified time will avoid the policy, unless the company has waived such payment or the delay is due to some omission on its part. Richards on Insurance (2d Ed) p. 205; So. Mut. Ins. Co. v. Taylor, 33 Gratt. 743; Easley v. Ins. Co., 91 Va. 161. The payment of the first premium is a condition precedent to the liability of an insurance company upon a policy. Oliver v. Ins. Co., 97 Va. 134, 5 L. R. A. 260.
A provision avpiding a policy unless the premium is actually paid is waived by the delivery of the policy without requiring prepayment of the premium. Eagan v. Ins. Co., 10 W. Va. 583. Where the company charges the premium personally to the agent, who gives credit to the insured, it amounts to a payment of the premium. Wytheville Ins. Co. v. Teiger, 90 Va. 277. In Croft v. Ins. Co., 40 W. Va. 508, 21 S. E. Rep. 854, where credit had been given in an oral contract for insurance, the court says: “Insurance can 'be sold on credit as well as anything else. The agent can give credit. Eagan v. Ins. Co., 10 W. Va. 583, 588; Wood on Insurance, sec. 28; May on Insurance, sec. 360 d; Ins. Co. v. Colt, 20 Wall. 560; Long v. Ins. Co., 137 Pa. St. 335, 21 Am. St. Rep. 883, note. Prepayment, is not necessary to the conclusion of an oral contract. Wood on Insurance, secs. 22 a, 43 b.”
Where a policy provides that if a note given for the premium be not paid at maturity, such nonpayment .shall terminate the insurance and the note shall be considered the premium for the risk thus terminated the policy is forfeited for nonpayment of the note when due. Muhleman v. Ins. Co., 6 W. Va. 508.
The assistant secretary of a life insurance company has authority to waive the forfeiture of a policy for the failure to pay the premium on the day it was due, and to reinstate the policy. Piedmont, etc., Life Ins. Co. v. McLean, 31 Gratt. 517.
(2) Payment Prevented by Insurer.— Where the insurance company wrongfully determines the contract of insurance by refusing to receive a premium when it is due, and lapses the policy issued, the insured has a right to treat the policy as at an end and recover all the premiums he has paid under it. McCall v. Ins. Co., 9 W. Va. 237.
(3) Payment Prevented by War. — Where the performance of the condition in a policy as to the payment of premiums is prevented by the existence of war, the contract of insurance is suspended, not abrogated thereby, and such nonpayment, where the insured was ready and willing to pay, does not relieve the company from liability under the policy. Manhattan Life Ins. Co. v. Warwick, 20. Gratt. 614, 3 Am. Rep. 218; Mutual Benefit Life Ins. Co. v. Atwood, 24 Gratt. 497, 18 Am. Rep. 652; New York Life Ins. Co. v. Hendren, 24 Gratt. 536; Conn. Mut. Life Ins. Co. v. Duerson, 28 Gratt. 630; Clemmitt v. Ins. Co., 77 Va. 366, 76 Va. 355; Abell v. Ins. Co., 18 W. Va. 400.
Where the insured is prevented from paying the premiums on a life policy by reason of the existence of .war, and the company annuls the contract on account t>.f such nonpayment, the insured is entitled to have refunded the premiums paid, less enough to compensate the .company for the actual cost of such insurance. Abell v. Ins. Co., 18 W. Va. 400.
(4) Extension of Time. — A letter from an insurance company, in reply to a request from the assured, agreeing to grant an extension of time of payment of the premium on a policy upon the execution and return, before the policy lapsed, of an extension note enclosed in the letter, is not of itself a completed contract binding the company to grant the extension without the execution and return of the note. Ætna Eife Ins. Co. v. Ragsdale, 95 Va. 579.
(5) Evidence of Payment. — The possession of a policy of insurance is sufficient evidence of the payment of the premium thereon, on a demurrer to the evidence by the insurance company. Fidelity, etc., Co. v. Chambers, 93 Va. 138.
5. Beneficiary. — Where the insured took out a policy “for the benefit of his wife and their children” and had one child by his first wife and five children by his last wife, the child by the first, as well as the children by the last wife, is entitled to share the proceeds of the policy. Stigler v. Stigler, 77 Va. 163.
Where the insured took out a policy for his wife, and in case she died before him, then to her children, and his wife did die before him, the child’s rights in the policy, being derived from the company under the policy and not through her mother, vested immediately upon the death of her mother. Clemmitt v. Ins. Co., 76 Va. 355.
6. Assignment. — The insured, intending to assign a policy on his life to a third party as a gift, executed an assignment thereof in duplicate and delivered one copy to the insurance company for its protection, and not as agent of the assignee. He failed, however, either to deliver the policy or the other copy of the assignment to the assignee. Held, that the assignment was incomplete and could not be enforced in law or equity. Spooner v. Hilbish, 92 Va. 333.
An endorsement on a life insurance policy by,the beneficiary therein which is testamentary in its character, but which has not been, and cannot be, admitted to probate, is not admissible in evidence to show title in the legatee named in said endorsement, and a payment of the policy by the insurer to such beneficiary is wrongful. Nor, in an action on the policy, is evidence relevant which merely tends to show that the endorsement was made in the presence of witnesses, at the special instance and request of the beneficiary, and that she made her mark as a signature thereto. A will must be proved before a probate court in a proceeding for that purpose. Grand Fountain U. O. T. R. v. Wilson, 96 Va. 594, 4 L. R. A. 839.
7. Voluntary Conveyance of Policy.— Where one takes out a policy payable to his wife and children, and thus, to the extent of the premiums paid, decreases his own estate, his then existing creditors have a right to subject the proceeds of the policy upon his death to the extent of such premiums paid, regardless of whether the premiums paid were fraudulent or not, because it was a voluntary conveyance and void under Va. Code 1873, ch. 114, § 2. But it seems that only the premiums for five years can be reached under the statute. Stigler v. Stigler, 77 Va. 163.
S. Suicide. — Where a policy of life insurance contains no clause prohibiting suicide, the suicide of the insured when insane, is no breach of the implied condition upon which the policy is issued. But if the insured, under such a policy, deliberately takes his oVn life, when sane, such act is a breach o.f implied •conditions, and exonerates the insurer from liability. If, under such policy, the death is caused by the vol *467 untary act of tile assured, knowing and intending that his death shall be the result of his act, and when he is in possession of his ordinary reasoning faculties, such suicide will prevent a recovery, unless he is impelled thereto by an insane impulse which he has not power to resist. A contract by the insurer to pay the amount of the policy to the estate of the insured in case of his deliberate suicide when sane, is contrary to public policy and void. Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 3 Va. Law Reg. 776.
9. Proof of Loss. — When the general agent refuses to recognize any claim, such refusal waives compliance with the conditions as to preliminary notice and proof, and authorizes immediate suit. Traveler's Ins. Co. v. Harvey, 82 Va. 949. As to waiver of technical requirement, see Richards on Ins. § 80.
10. Agents. — An agent, who writes policies, settles the terms of insurance, investigates losses and recommends payment or nonpayment, must be deemed a general agent, without regard to extent of tcriitory or scope of powers; and such agent has the power to waive the conditions of a policy as to the preliminary proof of loss. Traveler’s Ins. Co. v. Harvey, 82 Va. 949.
A life insurance company is chargeable with knowledge of all the facts stated by the applicant for insurance to the agent as to the time of his birth; and he, having truly stated to the agent the time of his birth, cannot be held to have made a misstatement towards the insurer, although the written application, as drawn up by the agent, does not correspond with the verbal statement made by the assured to the agent. McCall v. Ins. Co., 9 W. Va. 237.
A contract procured by the false representation of an agent is not voidable at the option of the party deceived, where it appears that the representation was the mere expression of an opinion, and did not amount to an engagement or undertaking that the fact was as represented. In the case at bar, the plaintiff in error was induced to take out further insurance in a company on the representation of an agent of the company that the company would pay him the cash surrender value of a policy which he already held in the company. This representation was the expression of an opinion, and not the statement of a fact. Garber v. Bresee & Sons, 96 Va. 644, 4 L. R. A. 765.
Where the company ratifies an agent’s unauthorized acts, it cannot afterwards object to his want of authority. New York Life Ins. Co. v. Taliaferro, 95 Va. 522.
11. Construction. — The same rules of interpretation applicable to other instruments are applicable to policies of insurance, which are to be interpreted according to their sense and meaning. Where the insured has violated the plain terms of the contract he cannot recover. Universal Life Ins. Co. v. Devore, 88 Va. 778.
Where a policy contains contradictory provisions or is so formed as to render it doubtful whether the parties intended that the exact truth of the applicant’s statement should be considered a condition precedent to any binding contract, the construction which imposes on the insured the obligations of a warranty should not be favored. Schwartzbach v. Valley Protective Union, 25 W. Va. 622.
If a plain, unambiguous policy of insurance stipulates that, in consideration of a stated bimonthly premium, there shall be paid to the beneficiary a given sum upon the death of the insured less any “indebtedness due to the company” issuing the policy, such “indebtedness” cannot refer to unearned or unac-crued premiums, but must refer to a real or actual indebtedness that the insured or beneficiary is liable to the company when the policy matures. Nat. Life Ins. Ass’n v. Berkeley, 97 Va. 571, 5 Va. Law Reg. 703.
A mutual benefit society provided in its charter that on the death of a member “the fund to which liis family is entitled shall be paid as designated in the application for membership, and this being changed by death or otherwise, it shall go- — first, to the widow and infant children,” and then to others in order named. The insured, in his application, directed that the fund should be paid as specified in his will. He died without a will, leaving a widow but no infant child. Held, that the widow was entitled to the fund. Whitehurst v. Whitehurst, 83 Va. 153.
Section 3252 of the Code of Virginia, requiring that conditions and restrictive provisions of insurance policies must be written or printed in type of a prescribed size, should be liberally construed. The whole provision relied on must be in writing or printed in type of the prescribed size, or else it is not available as a defense to an action on the policy. Nat. Life Ass’n v. Berkeley, 97 Va. 571.
Only such assessment companies as raise money to pay a loss by a member’s death, by assessment made upon those who survive him, are entitled, under act of May 18, 1882, to be licensed without making the deposit of bonds under Code 1887, § 1271. In the act of May 18, 1887, the words “surviving members” designate such as are “not deceased,” and not those whose policies are “not lapsed.” Mutual Benefit Life Ins. Co. v. Marye, 85 Va. 643.
12. Evidence.
(1) Fraud.- — Fraud may be established by circumstantial evidence as well as by direct testimony, but, in either case, it must be clearly and satisfactorily proved. It will not be presumed from doubtful evidence, or circumstances of suspicion. The law never presumes fraud, but the presumption is always in favor of innocence and honesty. New York Life Ins. Co. v. Davis, 96 Va. 737.
An averment in an answer that a policy of insurance was procured by the suppression of material facts, and that the assured and another eonspired to thus obtain the policy, is a sufficient charge of fraud to admit evidence to prove the facts. Nat. Life Ass’n v. Hopkins, 97 Va. 167.
In an action on a life policy, where defense is made on the ground that the assured had falsely and fraudulently misrepresented his age, his declarations as to his age in a former application to another company for a policy for the benefit of another person cannot be received in evidence against the beneficiary in the policy in suit to prove the facts stated therein, but after proof tending to show that his age is different from what he represented it to be, it may be received to show that -he had knowledge of his age, and falsely and fraudulently misrepresented it. Union Central Life Ins. Co. v. Pollard, 94 Va. 146.
Statements of the insured sometime before his application are not admissible evidence to disprove representations of his age contained in said application; nor are statements admissible which were made by insured to company’s agent several months after the policy was issued, nor is it proper to allow a witness to give in evidence his opinion of insured's age from *468 the latter’s appearance. Valley Mut. Life Ass’n v. Teewalt, 79 Va. 421.
(2) Assessments. — Where the by-laws of a mutual life insurance company provide that “no question shall be raised as to the right to make, or necessity of, any mortality assessment made under any certificate of membership,- except in the lifetime of the member, and within six months from the time the same was made,” it is not competent for the plaintiff, after the death of the member, to offer evidence for the purpose of raising such question. Easley v. Ins. Co., 91 Va. 161.
(3) Parol Evidence. — Parol evidence is admissible to prove that the conditions inserted in the receipts were in violation of the agreement of the as-signee of the insured and the secretary of the company, and that by that agreement the forfeiture of the policy, if it had been forfeited, was unconditionally waivedl* McLean v. Ins. Co., 29 Gratt. 361.
13. Foreig-n Insurance Companies.
(1) Attachment.
a. In General. — An insurance company, incorporated by the laws of New York, having its principal place of business in that state, which has complied with the laws of Virginia in relation to foreign insurance companies doing business in the state, by making the deposit, and appointing a citizen of Virginia an agent, by power of attorney, etc., as required by statute, is not a resident of this state, within the meaning of the foreign attachment laws of Virginia, and the property of said insurance company is liable to such attachment as a nonresident. Whilst a corporation may, by its agents, transact business anywhere, unless prohibited by its charter or prevented by local laws, it can have no residence or citizenship except where it is located by or under the authority of its charter. Cowardin v. Ins. Co., 32 Gratt. 445, distinguishing Continental Ins. Co. v. Kasey, 25 Gratt. 268, and Conn. Mut. Life Ins. Co. v. Duerson, 28 Gratt. 630.
1). Measure of Recovery. — Each policy holder is entitled to a sum of money which, on the day of the company’s insolvency, would purchase from a solvent company a policy of the same kind, for the same amount and for the same rate of premium. This sum is ascertained by treating the difference between the premiums paid the defendant company and the premiums to be paid the new insuring company as an annuity for the assured’s expectation of life, and calculating its cash value. Universal Life Ins. Co. v. Binford, 76 Va. 103.
(2) Garnishment. — The treasurer of the state, who holds bonds of a foreign insurance company, doing business in the state, under the act of February 3, 1866, as amended by the act of March 3, 1871, is not liable to be summoned as garnishee by a foreign creditor of the insurance company. Rollo v. Ins. Co., 23 Gratt. 509, 14 Am. Rep. 147.
(3) License Tax. — The city of Norfolk has authority under its charter, to impose a license tax upon foreign insurance companies having an agency in the city; and such companies are not exempted from this tax by the act of 1871-72, ch. 385, § 57, p. 484. Humphreys v. City of Norfolk, 25 Gratt. 97.
(4) Conflict of La-vrs. — The validity, nature, interpretation and effect of a contract of insurance is determined by, the law of the place with reference to which it is made, and an express stipulation of the parties that it is to be held and construed as made with reference to a certain jurisdiction shows by what law they intended the transaction to be governed. Union Central Life Ins. Co. v. Pollard, 94 Va. 146.
II. Accident Insurance. -
1. Definition. — “Accident insurance is an insurance against personal injury, or loss of life, by accident, and, though applied to a particular class of risks, depends upon essentially the same principles as other kinds of insurance. The value of the interest insured is not capable of exact determination after loss, as in the case of fire and marine insurance, but it may be fixed by the parties within such limits as will not make it a wager policy.” 1 Am. & Eng. Enc. Law (2d Ed.) 285; May on Insurance (3d Ed.) §§ 7, 535, 3 Min. Inst. (2d Ed.) pt. 2, 1197.
2. Voluntary Exposure. — The words “voluntary exposure” in an accident insurance policy, imply conscious, intentional exposure something which one is willing to take the risk of. The exposure must be to what reasonable and ordinary prudence would pronounce dangerous, and the accident complained of must have been in consequence thereof. Whether, in a given case, the conduct of the insured has been such as to preclude a recovery is for the jury, under all the circumstances of the case, to determine, or, upon a demurrer to the evidence, for the trial judge. Contributory negligence on the part of the insured will not prevent a recovery. Fidelity, etc., Co. v. Chambers, 93 Va. 138.
3. Bodily Infirmity. — Deafness will not avoid a policy of insurance “against injuries received in a consequence of bodily infirmity,” in the absence of evidence that such deafness in any way contributed to the injury. Fidelity, etc., Co. v. Chambers, 93 Va. 138.
4. Asphyxiation — Instructions.—An accident policy contained a provision that no recovery could be had, unless it was proved that the death of the insured was “caused by external, violent, and accidental means,” or where “caused by taking poison, or by contact with poisonous substances.” The insured was found dead in bed from inhaling coal gas. The testimony was conflicting as to whether coal gas was “poison or poisonous substance.” Held, that it was not error for the court to refuse to instruct the jury that inhaling coal gas was a taking of poison, if they believed coal gas to be a poisonous substance, which, when inhaled, destroyed life. U. S. Mut. Accident Ass’n v. Newman, 84 Va. 52.
Where the policy contained a clause that “the benefits shall not extend to any bodily injury of which there shall be no external and visible signs upon the body of the insured;” and the evidence showed that, when found, the body had bloody froth at the mouth, spots of blood on face and breast and red spots on body: Held, that it was not error for the court to refuse to instruct the jury that if there were no visible signs of injury upon body of insured, except the froth and red spots, that did not constitute visible and external signs of injury, as it was a fact properly determinable by the jury. U. S. Mut. Accident Ass’n v. Newman, 84 Va. 52.
5. Injuries Received in the Discharge of Duty. — A corporation organized to afford relief to employees of certain railroad companies, in one article of its constitution provides relief to those injured “by accidents while in the discharge of duty, and in the service of the Baltimore & Ohio Railroad Company, or of any other railroad company whose employees shall be admitted to the privileges of membership;” and in another article, “while in the discharge *469 of duty in the service of either of the companies aforesaid.” An employee, who from 4 to 15 minutes before had quit work for the day, while going home from work, in crossing the railroad tracks, was killed by cars. Held, that he is entitled, as a member of the association, to relief from it. Kinney v. Baltimore, etc., "Relief Ass’n, 35 W. Va. 385, 14 S. E. Rep. 8.
O. Rules of Construction.
(1) In General. — -The same rules of construction apply to this as to other instruments. Its language is to receive a reasonable construction, and its intent and substance should be regarded. When two constructions can be given it, that most favorable to the insured must be given. Where there is doubt as to the meaning of terms employed by the company to exempt it from liability, they arc to be construed most strongly against the insurer. U. S. Mut. Accident Ass’n v. Newman, 84 Va. 52; Fidelity, etc., Co. v. Chambers, 93 Va. 142.
(2) Insufficient Statement Not Denmrra-"ble. — The object of sec. 3249 of the Code, which authorizes the court to require a plaintiff or defendant to slate the particulars of his claim or defense is to give the opposing party more definite information of the character of such claim or defense than is generally disclosed by the declaration, notice, or plea, and to prevent surprise. But such statement does not constitute the issue to be tried, and need not be as formal or precise as a declaration or plea. It is not the subject of a demurrer. Tf the statement is not sufficient, the trial court should require a sufficient statement, and, if not furnished, exclude evidence of any matter not described in the notice, declaration, or other pleading, so plainly as to give the adverse party notice of its character. If the statement fails to disclose a legal claim, or to constitute a defence at law, motion should be made, if the issue is tried by a jury, to exclude any evidence offered in respect to the matter contained in the statement, or if the evidence has been admitted, to strike it out, or to correct its effect by appropriate instructions. Columbia Accident Ass’n v. Hockey, 93 Va. 678.
(ÍÍ) Equitable Set-Oil*. — -The provisions of sec. 3299 of the Code as originally enacted in 1831, allowing a special plea of equitable set-off, were intended to enlarge the right of defense theretofore existing at common law, and not to impair any previous right, or to take away defenses previously allowed by law. The common-law right of recoupment was not impaired, but, in addition thereto, the statute permitted the defendant to recover any damages he could prove in excess of the damages claimed by the plaintiff, and in an action upon a sealed contract to prove a failure of consideration, or fraud in its procurement, or breach of warranty of the title or soundness of personal property, for the price or value whereof he had entered into the contract. Columbia Accident Ass’n v. Hockey, 93 Va. 678.
B. PLEADING AND PRACTICE.
I. Suits in Equity.
1. Clearness. — It is an elementary rule that the bill should state the right, title or claim of the plaintiff with accuracy and, clearness, and that it should in like manner state the injury or grievance of which he complains and the relief which he asks of the court. Universal Life Ins. Co. v. Devore, 83 Va. 267.
2. Multifariousmess.- — A bill which sets forth two distinct and inconsistent causes of action, upon two different policies of insurance, one actually issued, upon which the premiums were not paid, the nonpayment being excused by the alleged insolvency of the company, the other, which ought to have been issued, because the first had been surrendered and receipted in full to the company, is bad on demurrer. Universal Life Ins. Co. v. Devore, 83 Va. 267.
8. Right to Trial hy Jury. — If an insurance company is properly before the court in a chancery suit where its policy is the subject of litigation, any issue or issues raised by the pleadings as to its liability on the policy must be tried according to the rules and principles governing courts of equity in such cases. It is not entitled to a jury trial as a matter of right, but only in the event that the case made shows that a jury trial is proper. New York Life Ins. Co. v. Davis, 94 Va. 427.
4. Dismissal of Sait. — Where a creditor files a bill alleging the insolvency of an insurance company and asking that the creditors be convened, that the amount of the company’s debts and assets be taken and that a receiver be appointed, the creditors described are not parties thereto in any sense; nor do they become so unless and until further action be had in the cause. Until such action, the suit is the suit of the plaintiff on the record, he is the sole do minus litis, and therefore may dismiss it at his will and pleasure. Piedmont and Arlington Life Ins. Co. v. Maury, 75 Va. 508.
5. Bill of Review. — -Where a complainant in her original bill admits that one of the defendants had an insurable interest in the life of her husband, and seeks a recovery on the ground that, having a double security for his debt, he had collected both, she cannot, in her bill of review, deny the insurable interest, and seek relief on other grounds. Beatty v. Barley, 97 Va. 11.
II. Actions on Policy.
1. WJb.0 May Sue. — Where C takes out a policy of insurance on his life for the benefit of his wife, and the insurance company fails during his lifetime, he may sue in his own name to recover the premiums he has paid. Universal Life Ins. Co. v. Cogbill, 30 Gratt. 72.
Where the insured took out a policy for his wife, and in case she died before him, then for the children, and his wife did die before him, the child’s interest in the policy vested immediately upon her death, and suit should be brought by the child and not by the personal representative of the wife. Clemmitt v. Ins. Co., 76 Va. 355.
2. "Where Action. Brought. — In Virginia an action at law or suit in equity may be brought to recover under a life policy in any county or corporation wherein the person whose life was insured resided at the elate of the policy. Va. Code 1887, § 3214. See also, Tile’s Notes to 1 Min. Inst. p. 314.
Where the purpose of the action is to subject the deposit required by law to be made by foreign insurance companies with the state of Virginia for the protection of the insured, the policy holder may sue in the circuit court of the city of Richmond. Universal Life Ins. Co. v. Cogbill, 30 Gratt. 72.
3. Service of Process.
(1) Domestic Companies. — The same rules which govern the service of process on other corporations apply to insurance companies. For service of process on corporation, see Va. Code 1887, sec. 3225; Tile’s Notes to 1 Min. Inst. 318 et seq. It is to be noted, however, that the provisions of section 3214 that an action to recover a loss under a policy of in *470 surance may be brought in any county or corporation wherein the property was situated, or the person whose life was insured resided, at the date of the policy, are not embraced in section 3215. Hence, these provisions are not governed by the inhibitions of section 3220, and process may, therefore, issue to some other county or corporation than that in which the action was brought, and, where there is no agent residing in the county, the process may be by publication. See 2 Bart. Law Pr. (2d Ed.) 1298. In Wytheville Ins. Co. v. Stultz, 87 Va. 629, where there*was no agent in. the county in which the action was brought, it was held that service by publication was proper, although the company was doing business both in banking and insurance, and another kind of service is provided for in an action against banks.
, (2) Foreign Companies. — -In Virginia it is provided by statute that every foreign insurance company doing business in the state shall appoint an agent .in the city of Richmond upon whom process may be served, and that in case of his death or inability to act, process may be served upon the Auditor of Public Accounts. V. C. §§ 1266, 1267, as amended by Acts 1889-90, p. 9; Continental Ins. Co. v. Kasey, 27 Gratt. 216.
In West Virginia there is a similar statute providing for an agent upon whom process may be served. Code W. Va., chap. 124, § 9.
Where a company withdrew from a state and revoked its appointment of an agent, but afterwards re-entered the state and appointed another agent under a new law, it was held that the new law referred to past as well as to future contracts, and service on the new agent in an action on a contract made when the company was previously doing business in the state was sustained. Conn. Mut Life Ins. Co. v. Duerson, 28 Gratt. 630.
4.Declax*ation,.
(1) Statutory Form. — In Virginia it has been provided by statute that if the plaintiff file the policy, •or a sworn copy thereof, with his declaration, it shall not be necessary, in respect to the conditions and pro.visos of such policy, to set forth in the declaration every such condition and proviso, nor to allege observance thereof or compliance therewith in particulars; but, it shall be sufficient to refer to the policy or copy and allege, in general terms, the performance of all its conditions and the violation of none of its prohibitions. V. C. *1887, sec. 3251. By Acts 1895-’96, p. 707, the pleadings are to. be filed and the proceedings matured as in ordinary actions.
A declaration, from which it is evident that the pleader intended to proceed under this statute', is good, although it largely follows the form of an ordinary declaration in debt. Va. F. & M. Ins. Co. v. Saunders, 84 Va. 210; Travis v. Peabody Ins. Co., 28 W. Va. 583. For form of declaration, see 1 Bart. Law Pr. (2d Ed.) 408; 4 Min. Inst., pt. 2 (3d Ed.) 1684.
In West Virginia a brief form for actions on insurance policies is provided by statute. Code W. Va., chap. 125, sec. 61.
Where the declaration is drawn under such statute and additional statements are ordered by the court, such statements are to be regarded as informal pleadings. Rheims v. Ins. Co., 39 W. Va. 672, 20 S. E. Rep. 670.
In assumpsit the common courts, or other courts proper in that action, may be joined with a court in the statutory form. Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584.
(2) Wliat Must Be Averred. — In an action on an insurance policy, where the money is only payable on the performance of certain acts and the existence of certain facts, the declaration must aver the performance of those acts and the existence of those facts. There can be no recovery upon such policy upon a declaration which contains only the common counts. If the common counts were sufficient, then the act for simplifying declarations on insurance policies (V. C. 1887, sec. 3251) was wholly unnecessary. Metropolitan Life Ins. Co. v. Rutherford, 95 Va. 773.
An averment that an insurance company has made and is making illegal assessments on its policy holders, including the plaintiff, is not sufficient to show that the company has repudiated the contract so as to entitle the plaintiff to sue at once and recover its value. The policy holder is only bound to pay lawful assessments, and then only upon proper notice. Refusal to pay illegal assessments is no reason for avoiding the policy, and the policy holder is not entitled to maintain an action against the company before the policy has been declared void. Lee v. Mutual, &c., Life Ass’n, 97 Va. 160.
(3) Demux,rex% — Misjoinder of parties is riot a good ground of demurrer, under Acts 1895-’96, p. 453. Lee v. Mutual, &c., Life Ass’n, 97 Va. 160.
In West Virginia the plaintiff may be required to file, in addition to his declaration, a sworn statement of the facts which he expects to prove, and, in an insurance case, the legal sufficiency of the facts thus presented was held to be properly raised by a demurrer. Deitz v. Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616.
(4) Amendment. — The court may allow the plaintiff to amend liis declaration, where it omits one of the conditions endorsed upon the policy. New York Life Ins. Co. v. Hendren, 24 Gratt. 536.
5. Recovery "by Motion. — A motion may. be maintained under sec. 3251 of the Code of Virginia, as amended by Acts 1895-’6, p. 707, for a judgment on an insurance policy, and the notice takes the place of both writ and declaration. Grubbs v. Ins. Co., 94 Va. 589; Morotock Ins. Co. v. Pankey, 91 Va. 259, 1 Va. Law Reg. 128; Union Central Life Ins. Co. v. Pollard, 94 Va. 146.
The statutory complaint on an insurance policy (Va. Code § 3251, as amended by Acts 1895-’6, p. 707) can only be filed where the loss or death insured against occurred before the institution of the suit. It cannot be filed upon an averment that the company has wholly repudiated and abandoned the contract. Lee v. Mutual, &c., Life Ass’n, 97 Va. 160.
6. Foreign Companies.
(1) Removal of Canse. — In an action upon a policy of insurance by a citizen of the state of Virginia against a foreign corporation doing business in this state, the foreign corporation is quoad hoc domiciled in the state by virtue of the statutes authorizing the company to do business here, and is not entitled to have the cause removed to the United States court on the ground that the corporation is a resident of another state. Continental Ins. Co. v. Kasey, 27 Gratt. 216, distinguished in Cowardin v. Ins. Co., 32 Gratt. 445.
(2) Wi’it of Error.-Under article IV, § 1, of the constitution of the United States, and the act of Congress of May 26, 1790, a writ of error, not operating as a supersedeas, from the supreme appellate court of Texas to a judgment of a district court of that state, will be regarded as having the same effect in Virginia as in Texas.
*471 In such a case, an action may be maintained upon , the judgment in Virginia, notwithstanding the pend-ency of appellate proceedings in Texas, but the Virginia court may order that no execution shall be issued on a judgment obtained in such action, provided the defendant give bond and security conditioned to satisfy the judgment and pay all damages, costs and fees, etc., in case the writ of error pending in Texas should be determined adversely to the defendant.
The laws of Texas are not pleaded nor in evidence in the cause, but in the absence of proof of a difference between the law of that state and this, it will be taken that the law of that state, as it affects the question of the effect of a writ of error without a supersedeas, is the same as in this state. Piedmont and Arlington Life Insurance Company v. Ray, 75 Va. 821.